## COCHRAN v. PITTSBURGH & L. E. R. CO.

District Court, N. D. Ohio, E. D. March 8, 1923.

No. 11548.

Anderson & Lamb, of Youngstown, Ohio, for plaintiff.

Wilson, Hahn, Henderson & Wilson, of Youngstown, Ohio, for defendant.

WESTENHAVER, District Judge. Plaintiff filed herein December 19 a motion to vacate order entered September 11, requiring the petition to be made more definite and certain. This order, having been made after the adjournment of the term, is not now under the court's control. It is no doubt true, however, that an interlocutory order of this nature is not a final judgment, and may be disregarded hereafter, either by permitting an amended petition of substantially the same purport to be filed, or by refusing to dismiss the cause for failure to comply with this order, or otherwise. For this reason, I deem it fitting to hear argument and consider the questions of law presented.

Upon this motion, counsel have argued ably and elaborately the doctrine of res ipsa loquitur. The principles of this doctrine are not unfamiliar to me, but I have again examined critically all the authorities cited, and many others. It is not my purpose to review these authorities at length, but to state herein the principles upon which the doctrine rests, the limitations upon it, and the circumstances in which it will and in which it will not be applied. Briefly stated, I do not doubt that this doctrine is now and always was applicable in many personal injury cases as between master and servant. This I believe to be particularly true when the master and servant were, at the time the injury was sustained, engaged in interstate commerce, and the case is controlled by the Federal Employers' Liability Act (45 USCA §§ 51–59) or the several Federal Safety Appliance Acts. Whether it does in fact apply will depend upon the facts and circumstances characterizing the accident, rather than upon the relation between the parties, or whether it is controlled by the Federal Employers' Liability Act. This is true, even

as between a carrier for hire and an injured passenger.

The United States Supreme Court cases cited and relied on to support the contention that this doctrine does not obtain in negligence cases between master and servant are the following: Texas & Pacific R. Co. v. Barrett, 166 U. S. 617, 17 S. Ct. 707, 41 L. Ed. 1136 (a boiler explosion case.) ; Patton v. Texas & P. R. Co., 179 U. S. 658, 21 S. Ct. 275, 45 L. Ed. 361 (a loose step) ; Looney v. Metropolitan R. Co., 200 U. S. 480, 26 S. Ct. 303, 50 L. Ed. 564 (an electricity case) ; New Orleans & N. E. R. Co. v. Harris, 247 U. S. 367, 38 S. Ct. 535, 62 L. Ed. 1167 (an injured brakeman case) ; New Orleans & N. E. R. Co. v. Scarlet, 249 U. S. 528, 39 S. Ct. 369, 63 L. Ed. 752 (another boiler explosion case). All these cases, except the last two, arose prior to the enactment of the Federal Employers' Liability law. As the law then stood, defenses of contributory negligence, fellow-servancy, and assumption of risk were all available to the master. Upon re-examination of these cases, I am persuaded that nothing therein contained is directly pertinent to the situation now before the court. The res doctrine was not examined, although in the Patton and Looney Cases it was said that it had no application. In my opinion, this would still be true as applied to those cases, although, as to the Barrett Case, the res doctrine would now probably be applicable, although, notwithstanding its applicability, I perceive no error in any of the instructions which were given and approved by the Supreme Court.

 In the Harris Case, the first three are cited with approval. It is again said that in negligence cases between master and servant an affirmative burden of proof rests on the servant to establish the negligence as an affirmative fact. This is still true, notwithstanding the case may be one in which the res doctrine is applicable. The confusion arises from failure to distinguish between burden of proof and the res doctrine. The former is a rule of law which imposes upon the plaintiff the duty of proving his case by affirmative evidence. This burden never shifts, notwithstanding the case may be one in which the res doctrine will be applied. On the other hand, the res doctrine is a rule of evidence. It is a rule which permits or requires an inference of negligence to be drawn from the fact of an accident plus the circumstances which characterize the accident. It is an evidential inference, which will carry a case to the jury, but is not binding upon the jury; indeed, the weight of the inference is often-

times for the jury, and a court might not be justified in setting aside a contrary verdict, if the jury did not deem the inference sufficient to warrant a verdict in plaintiff's favor; and this no doubt would be true, even though the explanation offered by the defendant might not be adequate or pertinent.

As I read the Harris Case, this is all the court was deciding. The prima facie statute of Mississippi was construed by the Supreme Court of the state as shifting the burden of proof, not as leaving the issue to the jury, to be determined by them upon the basis of the evidential inference of the res doctrine, along with other evidence tending to show or rebut the charge of negligence. Upon the facts the Harris Case did not justify an application of the res doctrine. The injured employee was in the railroad yard, upon the ground at the time he was injured by another train, and one or more theories of the cause of the accident are as equally probable as is the inference that the train was being negligently operated. In this situation the res doctrine does not apply.

The Scarlet Case also arose under the Mississippi prima facie statute, involved the same questions, and was disposed of on the same grounds. The king-pin or chains connecting the engine with the tender broke while the train was in operation, causing the injury to the fireman employed on the engine. It is said that evidence that the king-pin or chains broke did not establish as a matter of law that the king-pin or chains were defective, but at most this presented a question for the jury. The Gotschall Case, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995, is referred to in that connection, and the sound inference, I think, is that Mr. Justice Brandeis, in delivering the opinion, did not intend to say that an inference that the king-pin or chains were defective might not be drawn from the fact that they broke in operation, but that it made merely a question for the jury. If, in addition to showing that the king-pin or chains had broken, the further circumstances had developed showing that the engine was being normally operated, that it was subject to no unusual or abnormal condition, that the break occurred under such circumstances of operation as a sound king-pin or chain would not have broken, it would seem to me that an inference might arise that they were defective.

The United States Supreme Court cases cited, in which the res doctrine has been held to apply, are the following: Inland & Sea-Board Coasting Co. v. Tolson, 139 U. S. 551, 11 S. Ct. 653, 35 L. Ed. 270; Southern Ry. Carolina Division v. Bennett, 233 U. S. 80,

34 S. Ct. 566, 58 L. Ed. 860; Minneapolis & St. L. R. Co. v. Gotschall, 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995. The Tolson Case was between the owner of a steamship and a third person injured on the wharf while the steamship was making the landing. The res doctrine was applied upon what seem to me to be rather narrow grounds. In the Bennett Case, as I understand the opinion, it states and applies the res doctrine as I understand that doctrine. The charge of the court below was criticized as shifting the burden of proof as to negligence, notwithstanding the applicability of the doctrine, and it was this criticism that Mr. Justice Holmes was repelling He says the part of the charge criticized "merely expressed in an untechnical way that, if the death was due to a defective instrumentality and no explanation was given, the plaintiff had sustained the burden." And further the judge did not say "that the fall of the engine was enough, but that proof of a defect in appliances which the company was bound to use care to keep in order, and which usually would be in order if due care was taken, was prima facie evidence of neglect." This is another way merely of stating what I understand the law to be, namely, that accident and injury do not themselves make a basis for the application of the res doctrine, but that the circumstances surrounding the accident and characterizing it must be shown, and must be such as to justify the evidential inference. The Gotschall Case may be disregarded, because the inference of negligence was drawn from the parting of an automatic coupler, as to which an absolute liability is imposed upon the interstate carrier.

The unvarnished truth is that none of the Supreme Court cases contain a studied, careful statement of the res doctrine, nor any sufficient or critical analysis of the circumstances under which it is applicable. This work, however, has been well and ably done by the Circuit Court of Appeals in this circuit in the following cases: Cincinnati, etc., Ry. Co. v. South Fork Coal Co., 139 F. 528, 1 L. R. A. (N. S.) 533; Lee Line Steamers v. Robinson, 218 F. 559, L. R. A. 1916C, 358; Pennsylvania Co. v. Clark, 266 F. 184. The first two cases particularly examine the basis on which the doctrine rests, review the authorities, and state so clearly the circumstances under which the doctrine is applicable that nothing profitably can be added. The Clark Case was that of an injured passenger, and is particularly applicable as dealing with the pleadings, trial procedure, and instructions of the court. In addition thereto, attention of counsel is called to the able and extended note to Cincinnati Traction Co. v. Holzenkamp, 74 Ohio St. 379, reported in 113 Am. St. Rep. 986. The note begins at page 986 and extends to page 1031.

The purport of these authorities only will be stated. The res doctrine is not applicable, or, in other words, negligence will not be inferred merely by proving or alleging the relation of carrier for hire and injury to a passenger while on his journey, or proof of the relation of master and servant and injury in the course of his employment, even under the Federal Employers' Liability Act. Something more is required. The circumstances characterizing the accident must be alleged and proved. These circumstances must create a reasonable probability that the accident was due to negligence, rather than to pure accident or act of God; that the defendant or its employees, other than the one injured, should have had control of the agency as would not ordinarily have happened, if ordinary care had been exercised; that the circumstances did not leave outstanding another existing and equally probable cause of the accident, not depending on the master's negligence, and for which he would not be liable; that the circumstances of the accident were such that the means and opportunity of finding out how it happened, or what caused it, are more properly within the knowledge and control of the master than of the servant. If these circumstances concur, an inference of negligence will then be drawn. This, however, does not shift the burden of proof, which always remains on the injured plaintiff. The duty and necessity for explanation is cast upon the master, having control of the instrumentality causing the accident and being in a better position to determine and show the cause of the accident.

In case of passengers, proof of injury while that relation exists needs only to be supplemented by slight additional proof of the surrounding circumstances, such, for instance, as the train on which he was being carried collided with another train, was derailed, or broke down. In a master and servant case, while the defenses of contributory negligence, follow-servancy, and assumption of risk were available, it was difficult, if not impossible, by proving the accident and its attending circumstances, to eliminate all other reasonably probable causes of the accident, except one depending upon the master's negligence; hence it has been usually said the doctrine has no application in cases between master and servant. On principle, however, if the circumstances warrant it, the doctrine was then and is now just as applicable be-

tween master and servant as between a carrier for hire and an injured passenger, or an injured third person.

The Federal Employers' Liability Act (45 USCA §§ 51–59) supplemented by the Federal Safety Appliance Ast (45 USCA § 1 et seq.) has entirely changed the situation. Now an employee of an interstate carrier, injured while engaged in interstate commerce, is entitled to recover as broadly as is an injured passenger. The differences are very slight, and such as do exist are probably in favor of the employee. A passenger's contributory negligence will defeat his action, but an employee's contributory negligence will not defeat his action. An employee may now recover in all cases in which the employer or any fellow servant has been negligent, and, if his injury is due to a failure to comply with a Safety Appliance Act, the liability is absolute, whereas the liability to a passenger is not absolute, but calls only for the exercise of a greater degree of care. The only material difference is that a carrier for hire owes to a passenger the highest degree of care known to the law, whereas the interstate carrier owes to the employee only what we call ordinary care, so far as is involved the acts of fellow servants or the duty in the matter of appliances, roadbed, etc., not specially covered by the several Safety Appliance Acts.

It would seem easy, therefore, in the case of such an employee, so to characterize the accident as to warrant the inference of negligence and to exclude the probability of the accident having been caused in a nonnegligent manner. Hence it seems to me that, in a case governed by the Federal Employers' Liability law and the Safety Appliance Act, the res doctrine will be applied, or, to state it differently, that an inference of negligence will arise from the accident whenever it is alleged or proved that the employee was injured in the course of his employment; that the nature of the accident is such as to make it probable that it was the result of negligence, rather than a pure accident or the act of God; that the agency causing the accident was not under the control of the injured employee, but of the master or other employee, for whose negligence the master is now responsible; that the circumstances render it improbable that there was any other cause than negligence in some form for which the master would be liable; and that it was the kind of accident such as does not ordinarily happen if due care is exercised. This is what we call the res doctrine. Such are, in part, the circumstances and conditions in which it is applied. In the present case it is alleged that the

defendant is an interstate carrier, governed by the Federal Employers' Liability Act; that the plaintiff and defendant were, at the time the plaintiff was injured, engaged in interstate commerce; that the plaintiff was in the performance of his duty, riding upon a moving train of cars; that while these cars were thus being moved or shifted into a yard, and over a cross-over, the car upon which he was riding was derailed, thereby causing him injury. What further, if any, circumstances need be alleged and proved, characterizing the accident, to warrant the inference of negligence? Is there any probable outstanding cause of the accident, other than the negligence of some one? Is there any other probable cause than the condition of the roadbed, of the cross-over, or of the tracks, or of the trucks or flanges of the car? If there is any other probable cause, is it not that of some fellow employee, either the engineer in handling the train, or of the conductor in controlling it, or of the switchman in handling or throwing the switch? If the derailment resulted from any of these causes, the master will be liable.

Are cars derailed, if the persons operating the train, or charged with the duty of keeping the cars or the track in repair, have exercised the care ordinarily exercised? Are trains derailed ordinarily, or, if not, derailed as a result of pure accident, or while being handled or managed and kept in repair with the exercise of ordinary care? If derailment occurs, and an employee not conducting the operation is injured, is not the means of explaining and proving the cause of the derailment, and showing that it was one not arising out of the negligence of the carrier, or some of its employees, within the knowledge and ability of the carrier, rather than of the injured employee? Applying these and all the tests suggested, it seems to me that, as the law now stands, the inference of negligence must be drawn, with no other proof of characterizing circumstances than are alleged in this petition, and that the duty of explaining is cast upon the employer.

In its last analysis, the case comes down to this: Does the difference in degree of care required of the master and its employees towards an employee, from that required of a carrier of passengers for hire and its employees towards such passengers, call for a different rule? It does not seem so to me. Negligence in either case is a breach of duty. In neither case, unless except under the Safety Appliance Act, is the carrier an insurer. The carrier in both cases has charge of and operates the instrumentalities which caused

the injury; the accident is one which does not usually happen if ordinary care is exercised by those charged with the operation or the upkeep of the instrumentalities; and all theories as to the cause not depending on negligence for which the employer is liable are repelled by the proof in the manner stated in this case.

The court cannot vacate the order. It will give leave, however, to plaintiff to prepare and file an amended petition, in substantial conformity to the view herein expressed.