JOSEPH G. CANTLEY v. MISSOURI-KANSAS-TEXAS RAILROAD COMPANY, a Corporation, Appellant.—No. 38606.—183 S. W. (2d) 123.

Division Two, September 5, 1944.

Rehearing Denied or Motion to Transfer to Banc Overruled, November 13, 1944.

606

*Cooper, Neel, Sutherland & Rogers* and *Carl S. Hoffman* for appellant.

608

*Byron V. Boone* and *C. A. Randolph* for respondent.

 BOHLING, C.—This is an action under the Federal Employers' Liability act for injuries sustained as a result of the derailment of a locomotive tender during a switching movement. Missouri-Kansas-Texas Railroad Company, a corporation, appeals from a judgment for $30,000 in favor of Joseph G. Cantley. Plaintiff based his cause of action upon the res ipsa loquitur doctrine. Defendant questions the submissibility of plaintiff's case under said doctrine, the giving and refusing of instructions, the admissibility of certain evidence and the amount of the judgment.

Plaintiff was injured about 6:50 P. M., September 21, 1940, on an in-bound switching movement on the Daly sand plant spur track in defendant's yards and about a mile south of Osage, Oklahoma. Plaintiff was in charge of the movement; being defendant's engine or switch foreman and footboard yardmaster. The crew consisted of plaintiff, engineer McGinty, fireman Eccles, and switchmen Spears and Ritchie. Locomotive No. 716 had been brought into Osage on September 21, 1940, from Parsons, Kansas, as part of a freight train for switching duties, was made ready and was turned over to plaintiff's switching crew at 3 P. M., they being on the ·3 P. M. to 11 P. M. shift. There had been a "drizzling rain" but plaintiff did not recall whether that condition continued at 6:50 P. M. The locomotive headlights and the switchman's lanterns were lighted. The crew had picked up a car of gasoline 4 or 5 miles south of Osage, which was attached to the front or south end of the engine. The movement north was a back-up movement, the locomotive tender being the lead or north car. Five cars were destined out-bound from the Daly sand plant and plaintiff intended to pick them up on the return trip. The Daly sand plant was located on the Arkansas river and its spur track led off of defendant's main line to the east·at a point where the main line is on a 6 degree curve to the ˜west, or left proceeding northwardly. The track was banked, the outer (east) rail being 5 inches higher than the inside rail. The switch track was on a 1.36 degree curve to the right with a .38 per cent ascending grade for a distance of 73.2 feet, to the switch frog. The next 30 feet were practically straight and on a .15 per cent descending grade. Then the spur track entered a 10 degree curve to the left for 133 feet, and was on a descending grade varying from

2 to 4 per cent. Plaintiff was of opinion the switch track had the same kind of rail (85 pound rail) that defendant used on its main line. Plaintiff was riding the outer edge of the foot board (a divided board) of the tender on the engineer's (west) side; the front end of the movement. The car of gasoline was cut off four or five car lengths south of the switch point. Then the tender, the locomotive pushing, was moved to within the usual distance (4 to 8 feet) of the switch point and the switch, which was on the fireman's side, was thrown for the spur track. Plaintiff signaled the engineer to back up and when this movement had progressed between 75 and 130 feet, the lead end of the tender derailed on the east rail and the footboard on which plaintiff was standing caught on the rail of the spur, was bent back under the tender, and plaintiff was thrown between the rails and injured. Other facts are developed in the course of the opinion.

■ The evidence established a submissible fact issue on actionable negligence. Defendant's brief concedes the speed of the movement occasioned the injury. Defendant's general assertion of no actionable negligence is without merit.

■ Defendant insists plaintiff, under the evidence, was not entitled to submit his case under the res ipsa loquitur doctrine: Because the locomotive and tender were being operated at the time under the supervision and control of plaintiff. Because the facts bearing on negligence surrounding the derailment were as available to plaintiff as to defendant. Defendant does not question the applicability of the doctrine to master and servant cases under the Federal Employers' ■ Liability act in appropriate instances.[1]

Plaintiff's answer is that the case was properly submitted under the res ipsa loquitur doctrine because he made a res ipsa loquitur case under the Boiler Inspection act and also made a res ipsa loquitur case under common law negligence.

A reason why plaintiff may not prevail on the theory of defendant's liability under the Boiler Insection act is that this was not plaintiff's trial theory.

The Federal Employers' Liability act imposes liability on railroads for injuries suffered by employees while engaged in interstate commerce arising out of the negligence of officers, agents, or employees, or negligence connected with any defect or insufficiency in its equipment. See 45 U. S. C. A., p. 118, sec. 51 et seq.

The Boiler Inspection act provides: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive

[1]Southern Ry. Co. v. Bennett (1913), 233 U. S. 80, 34 S. Ct. 566, 58 L. Ed. 860; Minneapolis & St. L. Rd. Co. v. Gotschall (1916), 244 U. S. 66, 37 S. Ct. 598, 61 L. Ed. 995; Central Rd. Co. v. Peluso, 286 Fed. 661; Williams v. St. Louis-S. F. Ry. Co., 337 Mo 667, 685, 85 S. W. 2d 624, 635[5]; Noce v. St. Louis-S. F. Ry. Co., 337 Mo. 689, 698[3], 85 S. W. 2d 637, 641[5]; Benner v. Terminal Rd. Ass'n., 348 Mo. 928, 934[1, 2], 156 S. W. 2d 657, 659[1, 6].

unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service of such carrier without unnecessary peril to life or limb . . . '' Ibid., p. 97, Sec. 23. The carrier is an insurer with respect to the matters mentioned in the Boiler Inspection act. Its liability for a violation thereof is absolute, whether it be at fault or not. ''Negligence is not the basis of liability under the Act.'' Lilly v. Grand Trunk Western Rd., 317 U. S. 481, 485, 63 S. Ct. 347, 87 L. Ed. 411. ''This is not a negligence case.'' Aly v. Term. Rd. Assn. of St. L., 336 Mo. 340, 347[1], 78 S. W. 2d 851, 854[1].

The charge in plaintiff's petition was that while assisting the defendant in ''its business of interstate commerce and interstate transportation''; ''that said engine and tank, by, through, and on account of the negligence of defendant, was caused to jump the track and become derailed, and injure the plaintiff in the respects hereinafter described;'' that the locomotive and tank were owned and used by defendant and that plaintiff ''had nothing to do with the inspection, operation, maintenance, or repair of said'' locomotive, tank, or any part or appurtenance thereof, or the track or the road bed, his duties being concerned only with switching movements in the Osage yards. This was followed by a charge ''that on account of the aforesaid negligence of the defendant,'' plaintiff suffered specified injuries.

The Boiler Inspection act was enacted for the safety of railroad employees and by the terms of Secs. 53 and 54, quoted in the margin,[2] of the Federal Employers' Liability act, contributory negligence and assumed risks constitute no defense, in whole or in part, to an action founded on a violation of any provision of the Boiler Inspection act.

Plaintiff's main instruction, insofar as material, required the finding that plaintiff was engaged in interstate commerce and certain enumerated facts and concluded: ''. . . then you are instructed that such facts . . . are sufficient circumstantial evidence to warrant a finding by you that the defendant was negligent, and you may so find, unless you find and believe from other facts and circumstances in evidence that the occurrence was not due to any negligence of the defendant, and if you do find and believe from all of the evidence in the case that the defendant was negligent and that the plaintiff's

---

[2]''. . . that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation of such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.'' 45 U. S. C. A., p. 610, Sec. 53.

''. . . and no employee shall be held to have assumed the risks of his employment in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee.'' Ibid., p. 695, Sec. 54.

injuries, if any, were directly caused by the defendant's negligence, if any, then your verdict should be for the plaintiff, unless you should find against the plaintiff on the defense of assumed risk . . . ''

The recitals in the petition respecting plaintiff's want of control over the "inspection, operation, maintenance, or repair" of the locomotive, tank et cetera only negative plaintiff's control under the res ipsa loquitur doctrine. Plaintiff's instructions recognized the defenses of contributory negligence and assumed risks. Two related to the assumption of the risk; the main instruction being quoted supra and the other being cautionary in nature. Two related to contributory negligence; one required a finding that plaintiff's negligence constituted a contributing proximate cause and the other, if the jury found defendant "so negligent," authorized a proportionate diminishing of the damages if they also found plaintiff negligent. It is inescapable from the pertinent portions of this record that plaintiff proceeded upon the theory his res ipsa loquitur case was grounded in common law negligence as distinguished from an absolute and continuing obligation on defendant in the nature of an insurer against enumerated defects under the Boiler Inspection act; and he may not, upon appeal, prevail upon a different theory—a theory not passed upon by the jury. Consult: Keele v. Atchison, T. & S. F. Ry. Co., 258 Mo. 62, 73, 75(a), 167 S. W. 433, 436[1-3]; Kilburn v. Chicago, M. & St. P. Ry. Co., 289 Mo. 75, 88 (III, IV), 232 S. W. 1017, 1021(III, IV).

We are of opinion plaintiff was entitled to submit his cause on common law negligence under the res ipsa loquitur doctrine. The views of the Federal courts, not State courts, constitute the supreme law on questions arising under the Federal Employers' Liability act. Chesapeake & O. Ry. Co. v. Kuhn, 284 U. S. 44, 47, 52 S. Ct. 45, 76 L. Ed. 157. The writer has experienced considerable hesitancy in reaching the stated conclusion and some apprehension as to the final scope of the doctrine under the Federal authorities; but the holding is within the trend of the governing decisions to liberally extend its application. Defendant's State cases[3] are not controlling. Central Rd. Co. v. Peluso, 286 Fed. 661, 663, one of the early Federal cases applying the doctrine to an action under the Federal Employers' Liability act, quoted Francey v. Rutland Rd. Co., 222 N. Y. 482, 119 N. E. 86, with approval: '' 'The phrase usually employed to express the rule, res ipsa loquitur—the thing speaks for itself—may at times tend to obscure rather than to make clear what the rule means. All that is meant is that the circumstances involved in or connected

[3]Klebe v. Parker Distilling Co., 207 Mo. 480, 489, 493, 105 S. W. 1057, 1059, 1061, 13 L. R. A. (N. S.) 140; Grindstaff v. J. Goldberg & Sons Structural Steel Co., 328 Mo. 72, 80 (III), 40 S. W. 2d 702, 706[11]; Sabol v. St. Louis Cooperage Co., 313 Mo. 527, 546, 282 S. W. 425, 432[12]; Lynch v. New York, N. H. & H. Rd. Co. (Mass.), 200 N. E. 877, 882; Dryden v. Western Pac. Rd. Co., 1 Cal. App. 2d 49, 54, 36 Pac. 2d 394, 396.

with an accident are of such an unusual character as to justify, in the absence of any other evidence bearing upon the subject, the inference that the accident was due to the negligence of the one having possession or control of the article or thing which caused the injury. This inference is not drawn merely because the thing speaks for itself, but because all of the circumstances surrounding the accident are of such a character that unless an explanation be given the only fair and reasonable conclusion is that the accident was due to some omission of defendant's duty.' ''

The jury was privileged to find and especially so under plaintiff's evidence that plaintiff's control was not such as to necessarily deprive him of the benefit of the res ipsa doctrine under the Federal decisions. Eker v. Pettibone, 110 Fed. 2d 451, 455, was an action for the death of the engineer when the pony-truck of the engine jumped the main track and derailed 16 cars of a 41-car train. In disposing of the argument that the engineer was in control of the engine and for that reason res ipsa loquitur was not applicable under 45 U. S. C. A., secs. 51-59 (common law negligence, the negligence under consideration here), the court said: ''True, the decedent, as the engineer, had control of the speed of the engine, but he had no more control and was no more responsible for the proper functioning of the pony-truck which caused the accident, than was the fireman, brakeman or conductor.'' The plaintiff was a conductor in Lowery v. Hocking Val. Ry. Co., 60 Fed. 2d 78; a brakeman in Nashville, C. & St. L. Ry. Co. v. York, 127 Fed. 2d 606; and Whitaker v. Pitcairn, 351 Mo. 848, 174 S. W. 2d 163; and a switchman in Sibert v. Litchfield & M. Ry. Co. (Mo.), 159 S. W. 2d 612. The foregoing are cases involving derailments of railroad cars. In Ramsouer v. Midland Val. Ry. Co., 135 Fed. 2d 101, a derailment case, plaintiff was considered not entitled to a res ipsa loquitur submission for the death of her husband, a switchman, where the evidence presented genuine fact issues with respect to specific negligence; the court observing: ''The doctrine is applicable where there is no evidence, circumstantial or otherwise, to show negligence apart from the happening of the accident or the infliction of the injury.'' But other Federal cases seemingly give the rule a broader scope than the quoted language implies. Cases supra and see Cochran v. Pittsburgh & L. E. Rd. Co., 31 Fed. 2d 769 (involving pleadings, a different issue, and containing some broad observations referred to in later cases); Pitcairn v. Perry, 122 Fed. 2d 881; Williams v. St. Louis-S. F. Ry. Co., 337 Mo. 667, 85 S. W. 2d 624.

Plaintiff testified throughout that he did not know just what caused the derailment. Plaintiff's witnesses Spears and Ritchie, members of plaintiff's crew, each testified in substance that the speed of the movement was 5 or 6 miles an hour; that there was nothing unusual about the movement except the fact of the derailment, and that he did not know the cause of the derailment. Plaintiff had been railroading since

1908, serving as engine watchman, foreman, fireman, brakeman, switchman, engine or switch foreman, and footboard yardmaster. At the time he was engine or switch foreman and footboard yardmaster. The engine foreman of a switching crew is in charge, some-what like a conductor is in charge of a train. As footboard yardmaster, in addition to the duties of the engine foreman, plaintiff had charge of defendant's Osage yard after the regular yard master or agent left for the day, usually about 5 or 6 P. M.; and had a general supervision over the operation of the yards. Plaintiff had worked at the Osage yards for many years and knew the Daly sand plant spur, as well as the 700 type (the heavier type) of engine used in switching service, which engines were also used in road service. Plaintiff knew sand was used on curves and also was used in going in and coming out of the Daly spur. Plaintiff put the speed of the movement at the time of the derailment at 10 to 12 miles an hour, the tender having gone 100 to 130 feet into the curve and the usual speed at 6 to 7 miles an hour on this particular track. He was just in the act of giving the engineer the ''go easy'' signal as he thought they were moving a little too fast, going down hill and into a curve (reverse curve), and getting off the track could result. The engine left defendant's repair shops on September 12th, where wheels had been installed on the tender. Plaintiff testified that on the trip to the Daly spur (a back-up movement with the tender the lead car) he was riding the footboard of the tender and noticed that the wheels ''would sing'' on the curves; that the ''singing'' could have been caused by the wheels or truck being rigid; that a rigid wheel will always sing but a new wheel might sometimes sing without anything being wrong; and that if the wheels were very rigid it would probably cause a derailment.

Several of defendant's witnesses testified they did not know the cause of the derailment. Some never tried to determine the cause. The next afternoon the same crew, with the exception of plaintiff, took the locomotive and tender to the Daly spur and ran it in and out on the spur several times at different speeds but was unable to derail the tender. All conditions, save for the weather being dry, were the same. Defendant's witness Burris, who was designated by other witnesses as defendant's ''wreck specialist,'' testified he was defendant's mechanical foreman: ''Q. . . . have you been able to determine what could have caused that accident there at that place? A. Nothing—I couldn't determine exactly. There could be several things. It could have been that he was going in too fast and hit the curve with the condition of the weather and everything.'' He explained that the use of sand, made necessary by the grade, would cause the track to become more or less rough; that 4 or 5 miles an hour would be a safe speed there; that the speed could cause the derailment, that the down grade, the curve, the rough rail, and the weather conditions would make a derailment easier, but gave as his opinion that the speed caused it.

With this evidence in the record from defendant's witnesses, including the employee whose duty it was to ascertain the causes of wrecks, that he could not determine the exact cause of the derailment, defendant is in no position to assert that plaintiff should come forward with the cause of his injury. We hold that, under the applicable authorities and the record presented, error in submitting the cause under the res ipsa loquitur doctrine is not established.

██ ██ Defendant's contention that plaintiff's testimony with respect to a derailment possibly resulting if the wheels were very rigid should have been excluded is not well taken. We understand from the record a derailment would not result from wheels that "would sing" on curves if new but not rigid. We think the jury was entitled to the fact for what it was worth that the wheels "did sing" on curves on this trip, the probable cause of such singing and the possible results from such cause in a res ipsa loquitur case, where a plaintiff by establishing the extraordinariness of the cause of his injury meets his burden of the proof and shifts the onus of going forward with the evidence and exonerating himself from all negligence to the defendant.

██ Defendant complains of the portion of plaintiff's main instruction italicized infra. The instruction directed a plaintiff's verdict upon findings, so far as material to the instant issue, that plaintiff was injured while in the employ of the defendant and engaged in interstate commerce "as foreman of a switching crew and that said crew was in charge of defendant's locomotive engine and . . . tender"; and "*that said locomotive and tender* and said main line and spur tracks *were owned, maintained or under the control* of the defendant" et cetera. The instruction authorized a plaintiff's verdict upon a finding that defendant owned the locomotive and tender, or upon a finding that defendant maintained the locomotive and tender. This is not the law. Defendant contends the instruction necessarily should have required a finding that defendant was in control of the locomotive and tender through some employee other than plaintiff. This is an employee-employer controversy; not a passenger-carrier controversy. It is an essential element of a res ipsa loquitur case that the defendant have control of the injuring instrumentality. This court en banc in *McCloskey v. Koplar*, 329 Mo. 527, 533 (I), 46 S. W. 2d 557, 559[1, 2], 92 A. L. R. 641, conceded the following to be law: "(2) In general and on principle *the doctrine res ipsa loquitur does not apply except when*: (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) *the instrumentalities involved were under the management and control of the defendant*; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." (Italics ours.) *Brown v. St. Louis County Gas Co.* (Mo. App.), 131 S. W. 2d 354, 359[11], states that if one essential element be absent the doctrine is

not applicable. The Federal cases are in accord. We find no case discussing the issue that indicates control by defendant is not an essential element of a plaintiff's res ipsa case. A sufficient reason is readily apparent in that if the negligence be plaintiff's negligence then plaintiff necessarily stands charged with knowledge of his own acts.

Plaintiff's petition was to the effect that defendant owned, maintained, operated, i. e., controlled, et cetera the locomotive and tender. Defendant's answer included a general denial putting this plea in issue and specifically alleged that said locomotive was being operated "in accordance with signals and directions given by the plaintiff and under the direction, supervision and control of the plaintiff" and that plaintiff "negligently directed said operation, and negligently failed to direct that said locomotive engine be operated otherwise . . . " This put in issue the constitutive element of control; i. e., whether plaintiff or defendant, through some employee other than plaintiff, was in control.

The rule of law is that controverted fact issues essential to a plaintiff's cause are to be established and so found by juries and that a verdict directing instruction omitting such a controverted essential fact cannot be cured by other instructions. In such cases there exists a fatal conflict in the instructions. State ex rel. v. Shain, 341 Mo. 733, 740[1], 108 S. W. 2d 351, 355[1-3], stating "The Jenkins case . . . and many others . . . stress instructions that omit an essential element and *authorize a verdict*. Where an instruction does that, all the cases say the error is incurable." State ex rel. v. Shain, 344 Mo. 57, 63, 124 S. W. 2d 1194, 1196; State ex rel. v. Ellison (Banc), 272 Mo. 571, 583, 199 S. W. 984, 988; McDonald v. Kansas City Gas Co., 332 Mo. 356, 364, 59 S. W. 2d 37, 40[6, 7]; 1 Houts, Mo. Plead. & Pr., p. 614. In this connection Carpenter v. Kurn, 345 Mo. 877, 895, 136 S. W. 2d 997, 1007[12], points out in discussing a like error that if the court may assume the existence of an essential controverted fact because defendant offered no evidence, it may with like propriety assume every essential fact not specifically controverted by evidence.

The instant record, considered as a whole, established the speed of the movement as an important causative factor. There was direct evidence and the jury could find the speed was the sole causative factor. The only witness undertaking to state a cause testified that "speed" was the cause. The jury, of course, was privileged to believe defendant's witnesses. The engineer testified that the locomotive was operated by signals, which included, among others, signals to "slow down" and "go easy"; and that it was plaintiff's duty to and he relied upon plaintiff to give the "slow" signal if he were going too fast. Also, if the jury might infer defendant was negligent from plaintiff's evidence establishing the occurrence of the derail-

ment then by as strong logic the jury could infer that plaintiff had control over the speed of movements on switch tracks from plaintiff's testimony that he was in the very act of giving the engineer the "slow signal" when the derailment occurred and especially so from plaintiff's testimony that at times it was necessary for him to slow down switching movements. In a sense it is true that defendant had control of the locomotive and tender; but defendant had delegated certain authority to plaintiff (he was engine foreman and footboard yardmaster) and constituted plaintiff defendant's alter ego for the purpose of controlling the movement on behalf of defendant; at least the jury could so find from the evidence. The engineer had control of the speed in the first instance but there was evidence a superior control rested in plaintiff. Injuries may result from the improper handling as well as from a defective functioning of the injuring instrumentality; and defendant, instead of admitting the fact, put plaintiff to his proof with respect to the handling of the instrumentality here involved. 45 C. J., p. 1215, states: ". . . *the doctrine cannot be invoked* where there is a divided responsibility and the accident is due in part to the act of a third party over whom defendant has no control, or *where the injuring agency is partly* or entirely *under the control* or management *of plaintiff*. The rule that the exclusive control and management of the appliance or thing causing the injury must be shown to have been in defendant does not mean physical control, but refers to the right of such control . . . " McCloskey v. Koplar, supra; 38 Am. Jur., p. 996, sec. 300. 35 Am. Jur., p. 925, n. 12; Annotation L. R. A. 1917E, p. 231. Cochran v. Pittsburgh & L. E. Rd. Co., 31 Fed. 2d 769, 772, where in ruling a petition the scope of the rule was broadly put, explicitly specified among the essential elements of a plaintiff's res ipsa case "that the defendant or its employees, other than the one injured, should have had control of the agency . . . " A plaintiff has the burden of proof and for this reason a plaintiff, injured by a machine entrusted to his control operating in an extraordinary manner, establishes as a part of his res ipsa case against his employer that he did nothing to cause such extraordinary operation and his resultant injury. The issue is not whether the plaintiff is entitled to recover or even whether a jury is privileged to consider a given cause as the or one of the efficient causes of plaintiff's injury; but whether defendant has put plaintiff to his proof of this essential issue of plaintiff's res ipsa case. If so, the law requires a finding by the jury upon that issue for a plaintiff's verdict. The instant defendant did this, both by its pleading and its evidence; and the instruction is erroneous in that it authorized a plaintiff's verdict even though the jury might have considered speed the causative factor and that plaintiff was defendant's alter ego for the control of the movement and its speed. The instruction is broader than plaintiff's pleaded cause of action.

Error did not result from refusing defendant's instruction No. 9. It was to the effect that if the movement was under the supervision and in accord with the directions of plaintiff and the derailment was caused by the speed of the movement, the verdict should be for defendant. Defendants are privileged to submit, as stated in Borgstede v. Waldbauer, 337 Mo. 1205, 1216, 88 S. W. 2d 373, 378 (the only authority cited), their legal defenses, but this statement does not disclose error in the instant case. The instruction was too all-embracing under the Federal act. See McPherson v. Thompson (Mo. App.), 164 S. W. 2d 80, 82[2, 4].

We deem it unnecessary to discuss other matters.

The judgment is reversed and the cause is remanded. *Westhues* and *Barrett, CC.,* dissent.

PER CURIAM:—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. All the judges concur.