**Louis NIMAN and Esther Niman, Respondents,**

v.

**PLAZA HOUSE, INC., a Corporation, and William C. Haas, d/b/a William C. Haas & Associates, Appellants.**

**No. 54534.**

Supreme Court of Missouri, En Banc.

Sept. 13, 1971.

Rehearing Denied Oct. 11, 1971.

Joseph S. Levy, Paul Margolis, Jr., Frank B. Reiser, Levy & Craig, Kansas City, for respondents.

C. Thomas Carr, Sheridan, Sanders, Peters, Carr & Sharp, Kansas City, for appellants.

MORGAN, Judge.

This is an action, brought under the res ipsa loquitur doctrine, for damages for personal injuries, loss of services, medical expenses and property damage. Plaintiffs received a verdict in a total amount of $25,800. Defendants have appealed. We affirm.

A divisional opinion failed of adoption after transfer to the Court en Banc, as did another opinion prepared after reargument and reassignment. This opinion is written following a second reassignment.

Factually, it appears that plaintiffs were tenants of a fifth floor apartment in an eleven-story apartment building owned by defendant Plaza House and managed by defendant Haas. On the night of December 16, 1964, plaintiffs retired. The next morning, Louis Niman awoke, got out of bed, and was shaving in the bathroom with the door closed. When Esther Niman awoke, she felt an intense heat and found the bedroom full of steam. She attempted to get out of bed, and when her feet touched

the floor, it was so filled with hot water and slime that she fell on her buttocks. She suffered immediate pain and severe injuries, and the furnishings in the apartment were generally ruined.

It is agreed that the Plaza House had a hot-water heating system; that boilers in the basement heated the water; that it circulated through pipes into and out of the various apartments with the assistance of pumps, which pulled the water through the system and discharged it back into the boiler for reheating; that the radiator in plaintiffs' bedroom ran along the west side of the room under the windows; that the water circulated lengthwise through a pipe in the radiator to the southwest corner of the room, looped through a shut-off valve and two 90° ell fittings, and then ran lengthwise through a second pipe back across the west wall to the return line; that the hot water in the apartment had escaped through a ruptured portion of one of the fittings.

The radiator and the pipes connected to it were hidden by a metal cover. The only protrusion therefrom was a "knob" or "handle" which was attached to the control valve for the purpose of regulating the extent of water flow through the radiator, which, in turn, allowed for control of the room temperature. When the building was originally constructed, each radiator had what was referred to as a butterfly valve. Such a valve had only a 90° opening and permitted only a quarter turn from off to fully on. After many complaints from tenants, including plaintiffs, that it was not possible to modulate the heat with such a limited turn, new valves were installed that allowed for a plus 360° turn. With the newer valve, a tenant supposedly could make a more selective choice of the amount of heat desired.

As noted, plaintiffs submitted and recovered under the doctrine of res ipsa loquitur. Defendants now contend: (1) that plaintiffs were not entitled to relief on the res ipsa loquitur theory for the reason

"they did not prove that the radiator involved was under the exclusive management and control of defendants," and (2) that instruction number 2 was not a properly modified MAI verdict-directing res ipsa loquitur instruction, because it injected for the jury's consideration elements not permitted by MAI, namely, that "the defendants possessed superior knowledge or means of information as to the cause of the occurrence and such occurrence is one that does not ordinarily happen when those in charge use due care."

As to point one, it is fair to observe that the parties are in accord as to the legal principles upon which the res ipsa doctrine is based, but disagree as to whether or not the factual situation shown falls within the limitations of the doctrine itself. Nevertheless, for simplicity of reference we mention those accepted precedents which provide guidance for resolving the two issues submitted.

In McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, this court said: "In general and on principle the doctrine res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence." Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001. In McCloskey, loc. cit. 46 S.W.2d 560 [2], it was further said: " * * * the requirement that the instrumentality be under the management and control of the defendant does not mean, or is not limited to, actual physical control, but refers rather to the right of control at the time the negligence was committed." Further clarification is found in Parlow v. Dan Hamm Drayage Co., Mo., 391 S.W.2d 315, 323, wherein it was stated that, "The divided control which precludes application against the defendant of res ipsa must be related to the cause of the casualty." Cantley v.

Missouri-Kansas-Texas R. Co., 353 Mo. 605, 183 S.W.2d 123, Littlefield v. Laughlin, Mo., 327 S.W.2d 863. Notwithstanding the fact that such guidelines have been so clearly stated, and oft repeated, the continuing difficulty of applying the same to a particular factual situation has caused the comment that: "It would be far better, and much confusion would be avoided, if the idea of control were discarded altogether, and we were to say merely that the apparent cause of the accident must be such that the defendant would be responsible for any negligence connected with it." Law of Torts, Prosser, Hornbook Series, 3rd Ed., page 225.

■ Did defendants have such control of the radiator as to make a res ipsa submission proper? It is agreed by all that the defendants were to provide heat for the apartment; and that they owned and maintained all portions of the heating mechanism, including the radiator in question. When defendant Haas was asked who had charge of the operation of the heating system, his answer was "I did." It was also conceded that tenants were to regulate the temperature in each of their particular apartments by turning the control knob and that no instructions or warnings were given that the radiator valve should not be completely closed. That a showing of the plaintiffs' possession of the apartment does not necessarily establish that they had "control" of all appliances therein is well established. As said in Gladden v. Walker & Dunlop, Inc., 83 U.S.App.D.C. 224, 168 F.2d 321, 322: "It is familiar law that a landlord who keeps control over parts of an apartment house must use reasonable care for safety. We have applied this principle to the lighting of a common entrance stairway. With regard to plumbing and heating systems, the principle extends to operative fixtures in the apartments leased to tenants and operation through them. We think the principle is equally broad with regard to the electrical system. Plumbing, heating, and electrical fixtures are not isolated either in use or maintenance. They must be maintained and used, if at all, in conjunction with the systems of which they are parts. Accordingly the tenant who uses them is usually not expected to maintain them, but only to notify the landlord when they appear to be out of order. * * * We think it immaterial whether the injury to appellant appears to have been caused by defects in operative fixtures or in other parts of the electric system. The law should follow custom and convenience in classifying such fixtures among the things that the landlord controls."

The Gladden case has been cited with approval by the courts of this state, Thompson v. Paseo Manor South, Inc., Mo.App., 331 S.W.2d 1, 5, Green v. Kahn, Mo., 391 S.W.2d 269, 274, and Minton v. Hardinger, Mo., 438 S.W.2d 3, 7; and in each case, it was recognized that appliances or operative fixtures provided by the lessor, although located within the demised premises, may have remained under the legal control of the lessor. In Thompson, 331 S.W.2d, loc. cit. 4, it was said, " * * * we are of the opinion that the weight of authority is that the landlord had and retained control of the entire heating system, including the pipes in each apartment." In Green, 391 S.W.2d, loc. cit. 275, this court concluded: "It seems clear to us that the evidence was substantial in tending to show that the main and lateral gas-service piping extending from defendants front building back to and into the three-apartment building with attached operative units or appliances, gas cooking stoves, for cooking and heating, constituted an integrated system for use by the tenants of the three-apartment building as a group and of which system defendants had reserved and retained control." Again, in the recent case (1968) of Minton v. Hardinger, 438 S.W.2d, loc. cit. 7, this court held: "The Mintons actually had possession of nothing more than the rooms of their apartment and the use of the appliances, with the landlord controlling everything else. Here, as in Green v. Kahn (Mo.Sup.), 391 S.W.2d 269, the

Mintons had the *use,* but not the *control,* of the bathroom gas heater and its connections." (Emphasis added.)

Basically, the same situation exists in the present case reference management and control of the heating pipe lines and radiators. The defendants owned, managed, controlled and operated the boiler system which heated the water that was circulated through the pipe lines and radiators of the apartment house. It is readily apparent that plaintiffs would have no control or even interest in such aspects of the heating system. There is no evidence, nor do defendants even suggest, that the plaintiffs had the right to alter or repair any part of the heating system, including the ruptured fitting, that was in their apartment.

Defendants rely heavily on the decision in Brown v. St. Louis County Gas Co., Mo. App., 131 S.W.2d 354, which is so factually distinguishable as to be of no benefit to their position. There, plaintiff, prior to a trip, called defendant to make certain adjustments on her own heating system in her own home. When plaintiff sought damages for defendant's negligence in doing so, the court found the charge of negligence could not be bottomed on the res ipsa theory for the obvious reason that defendant had no semblance of "control" of the heating system in plaintiff's home.

Admittedly, plaintiffs had available a "knob" to regulate the temperature in the apartment. Necessarily, when they made a temperature selection, by turning the knob, it was an accepted fact that the volume of hot water flowing through the radiator was to be affected. The knob was owned by defendants and provided for plaintiffs to allow them to use a part of the total heating system. Plaintiffs utilized this knob exactly as defendants intended that they would and to accomplish the purpose for which defendants supplied it. There is no contention that plaintiffs improperly operated the knob, nor that by turning the knob they affected the heating

system in some way that was not intended. In short, all the evidence reflects that plaintiffs did precisely what the defendants expected them to do. Of particular significance is the fact the knob did not break but it was an ell fitting entirely hid from plaintiffs. Had defendants believed that the heating system would not function properly when the knob was turned all the way off, it was their obligation to restrict the functional range of the knob to a degree which the heating system could tolerate. The purpose of plaintiffs' use of the knob was to regulate the *temperature* in the apartment, and it obviously would make no difference to plaintiffs whether this mechanically affected the flow of hot water or some other internal mechanism in the heating system. The shutoff valve, or knob, was nothing more nor less than a mechanical thermostat.

At trial, defendants established that the night in question was extremely cold, and that "perhaps" plaintiffs had opened a window which caused the water to freeze and burst the ell fitting. Such evidence was not pertinent to the issue of "control" of the heating system, but only as to whether or not plaintiffs were contributorily negligent in their "use" of it. Defendants pleaded contributory negligence, but did not submit that issue to the jury nor carry it forward in their briefs on appeal. For that reason we need not consider the effect, if any, of such evidence.

■ We have concluded that within the legal connotation of the word "control," as it is used in the res ipsa loquitur doctrine, the defendants had sole and exclusive control of the entire heating system and particularly that portion which ruptured and caused the damage suffered. Consistent therewith, we find that plaintiffs' cause of action was properly submitted under the res ipsa loquitur theory.

■ In their second point, defendants contend that the giving of Instruction No. 2, plaintiffs' verdict-directing instruction,

was erroneous and requires reversal of the judgment as entered. That instruction was:

"Your verdict must be for the plaintiffs and against the defendants, if you believe:

"First, the defendants managed, operated and controlled the apartment building and heating apparatus thereof, and

"Second, hot water and vapors were discharged from said heating apparatus into and upon the apartment unit which was occupied by the plaintiffs, and

"Third, the defendants possessed superior knowledge or means of information as to the cause of the occurrence and such occurrence is one that does not ordinarily happen when those in charge use due care, and

"Fourth, such discharge of hot water and vapors were a direct result of the negligence of the defendants, and

"Fifth, as a direct result of such negligence, said plaintiffs sustained damage."

Instruction No. 2 was designated "MAI 26.02(1) as modified." MAI 26.02(1), now 31.02(1) in the 1969 revision, is as follows:

"Your verdict must be for plaintiff if you believe:

First, defendant was the driver of the automobile, and

Second, the automobile left the street and ran across the sidewalk, and

Third, such movement of the automobile was the direct result of defendant's negligence, and

Fourth, as a direct result of such negligence the plaintiff sustained damage."

Necessarily, defendants concede that MAI 26.02(1), as written, was not applicable to the facts of the instant case and

modification was required. As is apparent from even a casual reading of the two instructions, it would not be inappropriate to observe that an admission modification was mandatory could be called an understatement. For instance, control, which must be present for a res ipsa submission, could hardly be in dispute as between the driver of a motor vehicle and a pedestrian, which provides the basis for MAI 26.02(1), now 31.02(1). Such an obvious problem will in time be eliminated as additions are made to MAI and patterned instructions are designed for a factual situation more comparable to that of the instant case. In any event, we are not here concerned with an unnecessary deviation from a required MAI instruction, Rule 70.01(b), V.A.M.R., Brown v. St. Louis Public Service Company, Mo., 421 S.W.2d 255; but, we must resolve whether or not plaintiffs did violate Rule 70.01(e), which provides:

"Where an MAI must be modified to fairly submit the issues in a particular case, or where there is no applicable MAI so that an instruction not in MAI must be given, then such modifications or such instructions shall be simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts."

If a violation is found, further consideration must then be given to Rule 70.01(c), which provides:

"The giving of an instruction in violation of the provisions of this rule shall constitute error, its prejudicial effect to be judicially determined."

Defendants' sole criticism of Instruction No. 2 is directed toward Paragraph Third. It is argued that: "Said items and elements by being added to the other proper parts of the instruction were confusing and misleading to the jury, and should not have been so unduly emphasized and called to the attention of the jury."

Initially, it should be noted that the two res ipsa elements listed in Paragraph Third

need not have been submitted to the jury. In Parlow v. Dan Hamm Drayage Co., supra, 391 S.W.2d loc. cit. 323 [8, 9–11], defendant challenged plaintiff's res ipsa submission because the same two elements had been omitted from the verdict-directing instruction. The contention was denied, with the following finding: "Defendant contends that plaintiff's Instruction No. 4 was erroneous because it failed to hypothesize facts from which the jury might find two essential elements of res ipsa: (1) That the occurrence was one that ordinarily does not happen in the absence of negligence; (2) That the defendant had superior knowledge or means of information as to the cause of the occurrence. These matters are regularly stated as essential elements of a res ipsa case. See McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559, 92 A.L.R. 641; Layton v. Palmer, Mo.Sup., 309 S.W.2d 561, 564(2), 66 A.L.R.2d 1242; Littlefield v. Laughlin, Mo.Sup., 327 S.W.2d 863, 865(2).

"[9–11] Although the two matters here referred to are essential elements of res ipsa cases, they are matters which determine, as a question of law, the right of a plaintiff to submit a case under that doctrine. As has been pointed out, res ipsa loquitur is a term employed to describe a negligence case in which the negligence is proved by circumstantial evidence, and, in which, the conditions for the application of the doctrine being present, the character of the accident is sufficient to take the case to the jury. Harke v. Haase, 335 Mo. 1104, 75 S.W.2d 1001, 1003(7). As in any other circumstantial evidence case, 'it is a judicial function to determine * * * whether certain circumstances, as a matter of law, warrant a certain inference.' Hoock v. S. S. Kresge Co., Mo.Sup., 230 S.W.2d 758, 760. In this case plaintiff's Instruction No. 4 was patterned according to the suggestion made in Harke v. Haase, supra. The defendant has cited no case in which it has been held that the elements here referred to must be submitted to a jury for its finding. In our opinion no such sub-mission is required and plaintiff's instruction was not erroneous for failure to submit such matters. See Leet v. Union Pacific R. Co., 25 Cal.2d 605, 155 P.2d 42, 50(11), 158 A.L.R. 1008." See also the similar holding in Brown v. Bryan, Mo., 419 S.W.2d 62, 66–67, reference a motor vehicle accident.

On its face, Paragraph Third of Instruction No. 2 was, in fact, simple, brief, free from argument, and did not require findings of detailed evidentiary facts. It is not comparable to the modification condemned in Epps v. Ragsdale, Mo.App., 429 S.W.2d 798, wherein "detailed evidentiary facts" were added, Rule 70.01(e), but is similar to the situation found in Slagle v. Singer, Mo., 419 S.W.2d 9, 13, wherein consideration was given to possible prejudice resulting from a necessary modification. However, was it impartial? As shown by the record, defendants by extensive questioning of plaintiffs emphasized that they had been tenants in this apartment for over ten years and were well advised of the heating system and its mechanism. With the thought that "superior knowledge" had become an issue for the jury, plaintiffs did unnecessarily include Paragraph Third. As indicated by the cited authorities, this was not necessary. Thus, we are left with the question whether or not such addition was so prejudicial as to call for reversal as provided in Rule 70.01(c). Defendants argue that the added paragraph was "confusing" and "misleading," but do not specify any particulars as to why that would be the result. From a reading of the entire record, it is difficult to conclude how it could have been so prejudicial as to call for reversal and a new trial. The rationale for not requiring submission of the "superior knowledge" element is that it is merged into the element of "control." As was said in Brown v. Bryan, supra, 419 S.W.2d loc. cit. 67[3–5], "* * * the element of superior knowledge of the occurrence is implicit in the required finding that defendant was the driver and operator of the faulty instrumentality * * *"

Thus, it is clear that although "superior knowledge" need not be specifically submitted, it is, in fact, a pervading factor in every res ipsa case. As noted, this is not a case wherein the transition to pattern instructions demands the use of an appropriate MAI instruction, but one where we are only to determine the possible prejudicial effect of a necessary modification. Under the facts of this case, we are unable to determine that there was any prejudice whatever to defendants. If anything, plaintiffs only assumed an additional and unnecessary burden.

The judgment is affirmed.

HOLMAN, BARDGETT and HENLEY, JJ., concur.

DONNELLY, J., dissents in separate opinion filed; FINCH, C. J., dissents and concurs in separate dissenting opinion of DONNELLY, J.

SEILER, J., dubitante.

DONNELLY, Justice (dissenting).

Plaintiffs submitted and recovered under the doctrine of *res ipsa loquitur*.

In McCloskey v. Koplar, 329 Mo. 527, 533, 46 S.W.2d 557, 559, this Court said: "In general and on principle the doctrine res ipsa loquitur does not apply except when (a) the occurrence resulting in injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence."

The defendants contend the res ipsa loquitur doctrine is not applicable because plaintiffs "did not prove that the radiator involved was under the *exclusive management and control* of defendants."

The first question which must be determined is whether it is permissible to allow the question of *control* to be resolved by the jury.

In Cantley v. Missouri-Kansas-Texas R. Co., 353 Mo. 605, 614, 183 S.W.2d 123, 127, a res ipsa loquitur case, wherein a division of control between plaintiff and defendant may have been present, this Court because the Federal Employers' Liability Act was involved, followed the views of the Federal courts, and held that the "jury was privileged to find * * * that plaintiff's control was not such as to necessarily deprive him of the benefit of the res ipsa doctrine under the Federal decisions." The Federal view, to the effect that the question of control is for the jury, is articulated in Jesionowski v. Boston & M. R., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416, 169 A.L.R. 947.

I would not embrace the Jesionowski position in Missouri, except, of course, where required to do so, as in cases where the views of the Federal courts constitute the supreme law. Cf. Allen v. St. Louis-San Francisco Railroad, Mo.Sup., 297 S.W. 2d 483; and Chambers v. Missouri Pacific Railroad Company, Mo.Sup., 356 S.W.2d 64, cases involving the Federal Employers' Liability Act. I believe that to adopt the Federal view would be to ignore the recognized legal impact of res ipsa loquitur in Missouri and, in practical effect, to eliminate the essential element of res ipsa loquitur that defendant have exclusive control of the injuring instrumentality. See McCormick on Evidence, § 309, pp. 643–644, n. 22.

In Harke v. Haase, 335 Mo. 1104, 1110, 75 S.W.2d 1001, 1003, this Court said: "What is a res ipsa loquitur case anyhow? Reduced to simple terms, does it not merely mean that negligence can be proved by circumstantial evidence and that certain circumstances, as to the character of an accident, are sufficient to take the case to the jury? * * * *" The true character of res ipsa loquitur, and the essential function it serves, must be recognized. Its scope is limited. In essence, it is but "one

type of circumstantial evidence." Prosser on Torts, 3rd Ed., § 39, p. 217. In a circumstantial evidence case, "it is a judicial function to determine whether evidence is substantial and whether certain circumstances, as a matter of law, warrant a certain inference." Hoock v. S. S. Kresge Co., Mo.Sup., 230 S.W.2d 758, 760. I believe the question whether the doctrine of res ipsa loquitur may be invoked in a given case is one of law for the court.

*Plaintiff Louis Niman testified, in part, as follows:*

"Q  After you lived in the Plaza House for a while, did you and your wife have any complaint as to the method that you were getting heat, the right heat or not?

A  Yes, we were complaining about it, and Mrs. Niman took it up with Mrs. Peck.

Q  She was a resident manager?

A.  Yes.

Q  What was your complaint?

A   Well, it got so we couldn't turn the knob. One way or the other.

Q  Where was the knob located on the radiator?

A  Same place it is now.

Q  Where's that?

A.  On the bottom.

Q  Would it be on the southwest corner?

A  On the southwest corner and on the bottom right near the floor. It protruded from the covering of the radiator.

\*     \*     \*     \*     \*     \*

Q  Now, what was the problem with the turn-off valve, or knob?

A  We couldn't turn it one way or the other.

Q  In other words, you just took the heat as it came, is that right?

A  That's right.

Q  What did you want to do?

A.  We wanted to be able to lessen the heat or increase the heat, or turn it off.

Q  In other words, you wanted to control it yourself, you and your wife?

A  All we wanted was to reasonably use it to effect the coolness or warmness of the room.

\*     \*     \*     \*     \*     \*

Q  \* \* \*  Now, did the management do something about this and change the valve or anything?

A  Yes, they put a new knob on it.

Q  All right. Did you say that was in September, 1961?

A  I don't know when it was.

Q  They put a new knob, or new valve in there? What did you do then?

A  All I knew was they had a knob on there that you could turn one way or the other.

Q  Would that turn it off and on or anywhere in between?

A  Well, we'd just turn up the heat or reduce the heat.

Q  Or turn it off?

A.  Yes."

*Plaintiff Esther Niman testified, in part, as follows:*

"Q  (By Mr. Carr)  So, from September of '61, when they put in this shut-off valve you could operate the heat in the apartment by turning this knob here (indicating) all—

A  A quarter of a turn.

Q  It would turn it off, or on, or anywhere in between, is that right?

A  A quarter of a turn for on and completely off.

\* \* \* \* \* \*

Q (By Mr. Carr) Well, you used it off and on, didn't you?

A I used it a quarter of a turn and then off.

Q So if you want heat in the room you would turn it on and if you wanted the room cool you turned it off?

A I would turn it a quarter of a turn if I wanted heat. If I didn't want heat I turned it off.

Q So, in that respect you could control the heat in that room, is that right?

A As far as that was concerned, yes."

I believe that if there was a division of control between plaintiffs and defendants of the instrumentality which caused the injury, and, under the evidence, it is just as probable that such injury resulted from the act or acts of plaintiffs as from the act or acts of defendants, the doctrine of res ipsa loquitur cannot be invoked by plaintiffs against defendants. Cf. McGrath v. St. Louis Transit Co., 197 Mo. 97, 104, 105, 94 S.W. 872, 874, wherein this Court said: "This is not a case, under the facts disclosed, where res ipsa loquitur applies. \* \* \* Where all the facts connected with the accident fail to point to the negligence of the defendant as the proximate cause of the accident, but show a state of affairs where an inference could be as reasonably drawn that the accident was due to a cause or causes other than the negligent act of the defendant, then the plaintiff cannot rely upon mere proof of the surrounding facts and circumstances of the accident, and the defendant is not called upon to explain the cause of the accident, and to purge himself of the imputed or inferential negligence."

The evidence in this case leaves unexplained the precise cause of the bursting of the ell fitting in the radiator. It is uncontroverted that defendants were in such control of the general heating system in the apartment building that they could affect temperature in the system throughout the building. However, I must conclude from plaintiffs' own evidence that plaintiffs could control the circulation of hot water through the radiator in their bedroom by use of the shut-off valve on the front of the radiator. Therefore, I am of the opinion that there was a division of control of the radiator between plaintiffs and defendants, and that it is just as probable, under the evidence, that the ell fitting burst as a result of an act or acts of plaintiffs as from an act or acts of defendants. Cf. White v. Spreckels, 10 Cal.App. 287, 101 P. 920.

The principal opinion cites in support of its position the cases of Gladden v. Walker & Dunlop, Inc., 83 U.S.App.D.C. 224, 168 F. 2d 321; Thompson v. Paseo Manor South, Inc., Mo.App., 331 S.W.2d 1; Green v. Kahn, Mo.Sup., 391 S.W.2d 269; and Minton v. Hardinger, Mo.Sup., 438 S.W.2d 3. These cases, of course, did not involve applications of the res ipsa loquitur doctrine. The principal opinion holds that the *concept* of "control," as applied in those cases, shall be applied in this *res ipsa loquitur* case. In my opinion, this transference of definition and concept from one theory of recovery to another cannot be justified in this case.

I would hold that plaintiffs failed to make a submissible case for the jury under the doctrine of res ipsa loquitur. However, the circumstances of the case are such that I believe a remand is justified to permit plaintiffs to seek recovery without resort to the doctrine of res ipsa loquitur. Minton v. Hardinger, supra; Shafer v. Southwestern Bell Telephone Company, Mo.Sup., 295 S.W.2d 109[1]. I would reverse and remand the cause, with directions to grant a new trial on the issue of liability only, and, depending upon the outcome of that trial, to enter judgment for plaintiffs in the amount of $25,800, or judgment for defendants.

I respectfully dissent.