# WILLIAM H. LINSTROTH, SR., et al., Respondent, v. MADELINE PEPER, Appellant.

**St. Louis Court of Appeals.     Argued and Submitted January 9, 1920, Opinion Filed February 3, 1920.**

1. **JURIES: Voir Dire Examination: Mentioning Defendant's Family Name not Prejudicial Requiring Discharge of Jury.** In an action for damages by the parents of a minor son who was run over and killed by an automobile, while the jury was being impaneled, where counsel for plaintiffs mentioned the name of the family to which defendant belonged in a question asked in the examination of the jurors, it will not be assumed that the mere mention of the name of the family to which defendant belonged conveyed to the jurors any idea as to the pecuniary standing, or wealth or social position of that family, and *held* there was no error in the action of the trial court in refusing to discharge the jury on that ground.

2. ———: ———: **Whether Questions Asked Are Prejudicial Largely Discretionary With Trial Court.** Whether a question asked in the examination of jurors on their *voir dire* is prejudicial, is largely within the discretion of the trial court.

3. ———: ———: **Counsel Have Right to Probe Proposed Juror to the Bottom.** Counsel have a right to probe a proposed juror to the bottom for the pupose of ascertaining whether or not his social or business relations, etc., are such as would probably prejudice him in the consideration of the case to be tried.

4. **EVIDENCE: Expert Evidence: Expert Permitted to State Conclusions and give Opinions.** In an action for damages by the parents of a minor son who was run over and killed by an automobile, etc., one of the defenses being that the driver of defendant's automobile could not, by the exercise of due care, have seen the boy in time to have enabled him to prevent the injury complained of, *held* that it was not error to permit an expert, witness to state his conclusions from an experiment and give his opinion as to what obstruction a telephone pole near the curbline was to a view of the street, etc., where it was open for defendant to test the conclusions stated by the witness and which really was his statement of a fact.

5. **DEATH BY WRONGFUL ACT: Neglignce: Automobiles: Dammages: Measure of Damages for Death of Child.** In an action by

parents for the death of their minor child, the measure of damages is the actual expense of the accident, placing the difference between the probable money value of the child's services and the probable expense of his education, support and maintenance from the time of the accident until he becomes of age; but probable money value of the child's services is not solely tested by what he might earn if put to outside labor.

6. **EVIDENCE: Offer of Proof Shoud be Specific: General Offer Properly Rejected.** In an action by parents for the death of their minor child, an offer to prove the qualifications of a witness, and then to prove what boys would earn from the ages of 14 on to and including the 20th year, was properly excluded in that it was too general; an offer to prove should be specific and definite.

7. ———: **Damages: Exclusion of Evidence Harmless Where no Complaint is Made of Size of Verdict.** In an action by parents for the death of their minor child, the exclusion of testimony under a general offer to prove earnings of a boy from his 7th to his 21st year, *held* not affecting the merits of the case or prejudicial to the defendant; no complaint being made of the size of the verdict.

Appeal from the Circuit Court of the City of St. Louis. —*Hon. Kent K. Koerner,* judge.

AFFIRMED.

*Bryan, Williams & Cave,* for appellant.

(1) Where no claim is made for punitive damages, in an action for wrongful death it is error to refer to the pencuniary condition or relative position of defendant in the community. Cyc. 211-212; 13 Cyc. 360; 17 C. J. 1365; Clark v. Fairley, 30 Mo. App. 335, 339-40; Berryman v. Cox, 73 Mo. App. 67, 70-72; Morgan v. Durfee, 67 Mo. 469. And the court erred in refussing to sustain appellant's motion to discharge the jury when her financial condition was referred to on *voir dire.* (2) It was error to permit witness Ball to state his conclusions from an experiment because all the conditions necessary to reach a proper conclusion were not shown to exist, and these conditions were not shown to have been the same as at the original event, nor should any experts have been permitted to give his opinions on

matters of common knowledge. 17 Cyc, 225; Witte Iron
Works v. Holmes, 62 Mo. App. 372, 375; McAnany v.
Henrici, 238 Mo. 103, 112-114; 17 Cyc, 284; Riggs v.
Railroad, 216 Mo. 304, 327-35; State v. Bass, 251 Mo.
107, 120-25; Helzemer v. Railroad, 261 Mo. 379, 411.
(3) (a) In an action by parents for the death of their
minor child, the measure of damages is the actual
expense of the accident plus the difference between
the probable money value of the child's services and
the probable expense of his education, support and
maintenance, from the time of the accident until he
becomes of age. Rains v. Railroad, 71 Mo. 164, 169;
Parsons v. Railroad, 94 Mo. 286, 294-301; Schaub v.
Railroad, 106 Mo. 74, 93; McGowan v. Steel Co., 109
Mo. 518, 530-38; Leahy v. Davis, 121 Mo. 227, 232-
35; Sharp v. National Biscuit Co., 179 Mo. 553, 558-60;
Goss v. Railroad, 50 Mo. App. 614, 622-29; Coleman
v. Lumber Co., 105 Mo. App. 254, 272-73; Brunke v.
Telephone Co., 112 Mo. App. 623, 627-28; Marshall v.
Mining Co., 119 Mo. App. 270, 272-75; Calcaterra v.
Iovaldi, 123 Mo. App. 347, 353-56; Howard v. Scarritt
Estate, 161 Mo. App. 552, 562-63. (b) In such an action
evidence is admissible to show the probable earnings
of the child from the time of his death until he would
have reached his majority, and the exclusion of the
evidence of witness Fairbanks on this point was error.
Rajnowski v. Railroad, 74 Mich. 20, 26-27; Love v.
Railroad, 170 Mich. 1, 8; Sceba v. Railroad, 189 Mich.
308, 319, 321-22; L. & N. R. R. v. Fleming, 194 Ala.
51, 57-58; Pierce v. Connors, 20 Colo. 178, 181; Atrops
v. Costello, 8 Wash. 149, 153-55; K. C. M. & O. R.
Co. v. Starr (Tex. Civ. App.), 194 S. W. 637, 640-41;
Gulf, etc., R. Co., v. Hicks (Tex. Civ. App.), 202 S.
W. 778, 779, 780; Boyd v. Railroad, 249 Mo. 110,
126; Chambers v. Hotel Co., 154 Mo. App. 249, 260;
Hawkins v. Railroad, 182 Mo. App. 323, 328.

*August H. Bolte* and *Martin T. Farrow*, for respondent.

(1) There was no error in the statement or question of plaintiffs' counsel respecting the family into which defendant had married, or in argument as to value of services. (a) Plaintiff had the right to inquire into the relations, if any, of the jurors with such family, as a basis for exercising challenges. Mahany v. R. Co., 108 Mo. 191, 18 S. W. 895; Saller v. Shoe Co., 130 Mo. App. 712, 109 S. W. 794; Nat. Bank of Rolla v. Romine, 154 Mo. App. 624, 136 S. W. 21; Boten v. Ice Co., 180 Mo. App. 160, 166 S. W. 883. (b) There was no statement by plaintiffs' counsel that defendant, or said family, was wealthy, such being the mere conclusion (or statement) of appellant's counsel. (c) There is no showing of prejudicial effect upon the jury, and none will be presumed: Tuck v. Springfield Traction Co., 140 Mo. App. 335, 124 S. W. 1097; Allen v. Quercus Lumber Co., (Mo. App.) 190 S. W. 86. (2) (a) Witness Ball's testimony respecting the location of the pole with reference to the alley and its effect on visibility was competent. McPherson v. R. Co., 97 Mo. 253, 10 S. W. 846; Ayers v. R. Co., 190 Mo. 228, 88 S. W. 608; McWhirt v. C. & A. R. R. Co., (Mo.), 187 S. W. 830; judgment affirmed in C. & A. R. R. Co. v. McWhirt, 243 U. S. 422, 61 L. Ed. 826; Standley v. R. Co., 121 Mo. App. 537, 99 S. W. 244; Miniea v. St. Louis Cooperage Co., 175 Mo. App. 91, 157 S. W. 1006. (b) Even if such testimony were incompetent, defendant cannot complain, as her Exhibit "A," between pages 32-33, abstract, shows the same state of facts. McWhirt v. R. Co., —Mo.—, 187 S. W. 830; judgment affirmed in R. Co. v. McWhirt, 243 U. S. 422, 61 L. Ed. 826; Philips v. Geiser Mfg. Co., 129 Mo. App. 396, 107 S. W. 471; Proctor v. Sutherland, 162 Mo. App. 641, 148 S. W. 127; Miniea v. St. L. Cooperage Co., 175 Mo. App. 91, 157 S. W. 1096. (3) The probable value of the child's services was a matter to be deter-

mined solely by the jury from their own experience and knowledge, guided by the facts and circumstances of the case. Nagel v. R. Co., 75 Mo. 653; Grogan v. Broadway Fdy. Co., 87 Mo. 321; Parsons v. R. Co., 94 Mo. 286, 299, 6 S. W. 464, 467; Rozenkranz v. Lindell R. Co., 108 Mo. 9, 18 S. W. 890; Schmitz v. R. Co., 119 Mo. 256, 278, 24 S. W. 472, 478; Stotler v. R. R. Co., 200 Mo. 107, 142-143, 98 S. W. 509; Spivack v. Hahn Bakery Co., (Mo.), 6-2-1919, 214 S. W. 166, 168; Blackwell v. v. Hill, 76 Mo. App. 46; Brunke v. M. & K. Tel. Co., 112 Mo. App. 623, 87 S. W. 84, 85; Baldwin v. Harvey, 191 Mo. App. 233, 177 S. W. 1087, 1089. (b) Therefore, so-called expert testimony was incompetent and inadmissible. Gavisk v. Pac. R. Co., 49 Mo. 274; St. L. K. & N. W. R. Co. v. St. L. Union Stockyards Co., 120 Mo. 541, 25 S. W. 399; Benjamin v. Metr. St. R. Co., 133 Mo. 274, 34 S. W. 590; Lee v. Publishers, etc., 155 Mo. 610, 56 S. W. 458; Graney v. R. Co., 157 Mo. 666, 57 S. W. 276; Koenig v. Union Depot R. Co., 173 Mo. 698, 720, 73 S. W. 637; Stotler v. R. Co., 200 Mo. 107, 142-143, 98 S. W. 509; Gage v. St. Louis Transit Co., 211 Mo. 139, 109 S. W. 13; McAnany v. Henrici, 238 Mo. 103, 113, 141 S. W. 633; Kent v. Miltenberger, 15 Mo. App. 480; Smith v. Kansas City, 125 Mo. App. 150, 101 S. W. 1118; Sparks v. Harvey et al., (Mo. App.), 214 S. W. 249, 252. (4) Even had the so-called expert testimony been admissible, there was no foundation laid for its introduction because: (a) The question was improper, as—First. It called for opinions based upon opinions. McAnany v. Henrici, 238 Mo. 103, 112, 141 S. W. 633. Second. It was not based upon the evidence. Root v. Kan. City So. R. Co., 195 Mo. 348, 92 S. W. 621; Hahn v. Hammerstein, (Mo.), 198 S. W. 833, 837; Sparks v. Harvey, (Mo. App.) 214 S. W. 249, 252. Third. It did not inquire as to the probable pecuniary value of the child's services to its parents from the time of its death until it would have reached majority (the proper measure of damages), but asked what the earnings of boys would be between the ages

of fourteen and twenty-one. Cases cited under head (3) supra, respecting measure of damages. (b) The witness did not qualify himself as an expert in the particular matter. Brands v. St. Louis Car Co., 213 Mo. 698, 112 S. W. 511. (c) There was no sufficient offer of proof. City of Kirkwood v. Cronin, 259 Mo. 207, 168 S. W. 674; Williams v. Williams, 259 Mo. 242, 168 S. W. 616.

REYNOLDS, P.J.—Plaintiffs, husband and wife, parents of a son who was killed when of the age of about seven years, bring this action for $10,000 damages.

The petition is in the usual form, averring the relationship of plaintiffs to the boy; that defendant was the owner of a motor car propelled by gasoline, and that the boy, son of the plaintiffs, on or about April 20, 1913, while crossing Newstead Avenue at a point between Labadie and Elmbank Avenues, was struck, knocked down and run over and killed by the automobile, and at the time of the accident so carelessly and negligently operated by defendant through her servant as chauffeur, and at such a high and dangerous rate of speed as to cause the accident. Averring that by reason of the injuries to and death of their child, plaintiffs have lost and will lose the value of his services until he would have arrived at the age of 21 years, and were compelled to and did pay out and become indebted in the sum $75.75 for the treatment of the injuries to the boy, medical and surgical services, and medicines, and the further sum of $210.50 for funeral and burial expenses, judgment is prayed for $10,000.

The answer, after a general denial, admitting that plaintiffs are the father and mother of the boy, avers that at the time of the accident the mother was in charge of the boy and was proceeding along Newstead Avenue; that at the time mentioned the boy was too young to be permitted to run in the streets alone and without proper guardianship and control; that while he was in the

company and under the immediate charge and control of his mother, she negligently permitted and directed him to cross and run back and forth in the roadway on Newstead Avenue alone and without proper guardianship and control at a place not intended for nor provided for the use of pedestrians; that the injury complained of occurred while this boy was at or near the middle of Newstead Avenue, and occurred by reason of the child negligently coming into the middle of the roadway of Newstead Avenue where he had no right to be and where neither defendant's servant nor any one else had any reason to believe the child would be; that the driver of defendant's automobile could not, by the exercise of due care, have seen the boy in time to have enabled him, by the exercise of due care, to prevent the injury complained of; that the negligence of plaintiffs, as above stated, directly and in a material degree contributed to the injury complained of and which would not have happened but for the negligence of plaintiffs as above set out.

To this a reply was filed, generally denying its averments.

There was a verdict in favor of plaintiff in the sum of $3000, judgment following, and interposing a motion for new trial, defendant has duly appealed.

The panel being under examination, counsel for plaintiffs mentioned the fact that the defendant was of the Peper Tobacco Company family of St. Louis, whereupon one of the jurors said that he had worked for the Peper Estate. Afterwards counsel for plaintiffs told the panel while under examination that defendant was a widow of one of the Pepers, who had died a year before, and asked the panel generally whether they knew this defendant. Counsel for defendant objected to the mentioning of other members of the Peper family, on the ground that the defendant was entitled to have the case tried against this defendant alone without taking into consideration any one else, and moved the court to discharge the jury. Counsel for plaintiff

thereupon withdrew the question. Counsel for defendant renewed the motion to discharge the jury, on the ground of prejudice created in the minds of the jury, the Peper family being well known in the city of St. Louis as people of means and wealth and the minds of the jurors having been turned toward the wealth or supposed wealth of the defendant, an issue outside of the case. The court overruled the motion, defendant excepting. This is all that appears in the abstract as to that matter.

During the trial of the case, which was before the court and a jury, it was admitted that the injuries which the boy had received from the accident had caused his death. It was also admitted that the defendant was the owner of the automobile at the time of the accident. It was further agreed that the life expectancy of the boy would be at least 40 years under any mortality table, and that the fair and reasonable expense of his last illness, funeral and burial due to the accident and incurred by the plaintiff was $285.75, and it was also admitted that the boy was not married.

There was testimony on on behalf of plaintiffs to the effect that at the time of the accident and death the boy was between 7 and 8 years of age—a strong, healthy, lively boy; that he and his mother were walking along Newstead Avenue on the afternoon of April 20, 1913, and the boy having occasion to cross the street to attend to a "call of nature," left his mother on the west side of Newstead Avenue and ran across and into an alley on the east side of that street. While returning to join his mother and while in the roadway of Newstead Avenue, he was knocked down and run over by the defendant's automobile, remained unconscious from that time until he died, dying about three days after as the result of these injuries. There was testimony for plaintiffs to the effect that the machine was going at the rate of between 25 and 30 miles an hour and had not slowed up before it struck the boy. The driver of the automobile testified that he was going at the rate of not exceeding

15 miles an hour and that his view was obstructed by a wagon on the side of the street, and that he did not see the boy until he was right on him and too late to stop. The testimony on the part of plaintiffs contradicted this statement as to a wagon being in the vicinity at the time and was to the effect that the street at that point was clear of any obstructions.

A witness, Dr. Ball, testified that he was familar with the neighborhood, passing along there a dozen times a day. He was asked this question: "There has been some testimony here about a telephone pole near the curb line about the south line of this laundry. Did you see that as you came up the street?" Witness answered, "Yes." He was asked to state to the jury "what obstruction that was, if any, of your view of the northwest corner of that laundry as you proceeded up the street?" This was objected to by counsel for the dedefendant "as calling for a conclusion of the witness and as being too indefinite. I think it is perfectly plain and the jury can tell what obstruction there was." To which the court said: "I do not think it makes any particular difference whether he answers it or not." Counsel for plaintiff said: "He makes a scientific answer here." The court said: "Let me see what he says. Let me see what a scientific answer is (testimony handed to the court). He just simply says what are the obvious facts. I do not think he helps the jury in any way to determine that. They have heard the testimony as to the location of the poles and where the automobile was." (Counsel, by agreement, were using the testimony of the witness given at the former trial.) With that before him counsel for plaintiff read: "Well, say a distance of 75 feet south from the pole, what obstruction, if any, would that pole be with referenuce to the view of the opening of that little alley?" Whereupon counsel for plaintiff said: "In order for a pole of that kind to be an obstruction of the view of anything you have got to have one point determined. For instance, now, whether or not that lamp (referring to one in the court room) now

between your Honor and I, is an obstruction of my view of you, depends entirely on where I am, and the position of this doctor in the street there is not indicated.'' The Court: ''Seventy-five feet away.'' Counsel for plaintiff: ''On the east side of the street.'' The Court: ''Driving his automobile. You can argue that to the jury. I think there is something in what you say, but the jury can determine that as well as I can. Let it go for what it is worth.'' Defendant excepted to this ruling of the court. Counsel for plaintiff, reading from the testimony of the doctor, taken at a prior ·trial, read this:

''Q. Well, say a distance of seventy-five feet south from the pole, what obstruction, if any, would that pole be with reference to the view of the opening of that little alley? A. None at all.''

Defendant introduced a witness, an agent of the Board of Children's Guardian of the City of St. Louis, who testified that it is the duty of the city to provide funds and the duty of the Board to supervise the care of children and board them out in foster homes and in their home when the mother is a widow. As agent of the Board he had been doing that; knew what it cost to rear children in a family in various circumstances in life and at various ages in the city of St. Louis. Food, lodging and clothing would cost about $7 a month for a healthy boy seven years old in a family of father, mother, boy and younger sister, living in the north part of the city and the father earning fifteen or sixteen dollars a week in the packing department of a furniture company; that would include all reasonable expense in rearing the child. Witness was asked by counsel for defendant what the boy would earn in that—when counsel for plaintiff interposed an objection, which the court sustained, defendant excepting, and counsel for defendant then said: ''Of course, the law presumes a boy will go to school until his fourteenth year.'' This was objected to by counsel for plaintiff, the objection sustained and defendant excepting. Asked what it would cost to support

a boy in his eighth year, witness stated he would think that amount of $7 would carry a boy from his seventh to his ninth years; in his tenth and eleventh years about $8; in his twelfth year about $10; in his thirteenth year and from his twelfth to his fourteenth year about $12 a month. Asked what it would cost in his fifteenth year, witness said: "It would depend on whether the boy went to High School or went to work."

The Court: "Well, we are getting in realms of too much speculation now."

Counsel for plaintiff objected and moved that all these answers be stricken out as absolutely speculative. The court overruled this, saying: "We will not go any further into it."

Counsel for defendant: "Well, we will offer the same kind of testimony up to and including the boy's twentieth year."

The Court: "What I said was we cannot speculate, if he goes to High School, so much, and if he doesn't go to High School, so much, and if he doesn't work, so much."

Witness under further questioning testified that if a boy did not go to High School but went to work in his fifteenth year the reasonable cost of his keep would be about $14; in his sixteenth year $15; in his seventeenth year, witness said, it "makes it a little difficult about answering, because it depends altogether on the boy's earning power and the position he is in." Counsel for defendant said: "Well, take a boy earning the usual and ordinary earnings of a boy of that age." Witness said, "about fifteen or sixteen dollars a month would carry that boy," and in his eighteenth year from twenty to twenty-one dollars. "It would be worth twenty-five to thirty dollars a month," witness said, "to take care of that boy from nineteen on," and the same for his twentieth year. Witness was then asked by counsel for defendant this question: "What would be the reasonable earnings of a boy of that kind in his fourteenth year?" That was objected to by counsel for

plaintiff and the objection sustained, defendant excepting. Asked to state the grounds of the objection, counsel for plaintiff said it was "purely speculative," to which the court said: "I do not see how one, a member of the Board of Children's Guardians, can throw any light upon this jury as to what a boy is going to earn."

Counsel for defendant: "I am only offering testimony, Your Honor, as to what the ordinary earnings of a boy in ordinary circumstances are, under ordinary conditions in the city of St. Louis, and this witness has already testified that he knows that." He then asked the witness this question. "Have you investigated the working conditions of boys of various ages, Mr. Fairbanks, what they earn? A. I have." This was objected to by counsel for plaintiff for the reason that the witness "is not qualified to know what boys are earning or anything of the kind." To which the court said: "There is no use arguing any further; I have already ruled. . . . I sustained the objection." There was no exception here. Counsel for defendant said that he offered to prove the qualifications of the witness and then prove what boys would earn from the ages of fourteen on and including the twentieth year. That was objected to, objection sustained and exception saved. On cross-examiation, the witness stated he had a wife and daughter but had raised no boys and did not know what it would cost to raise a boy in his own family.

While counsel for appellant make numerous assignments of error, only three points are briefed and argued.

The first point made is that where no claim is made for punitive damages in an action for wrongful death, it is error to refer to the pecuniary condition or relative position of defendant in the community, and the court erred in refusing to sustain appellant's motion to discharge the jury when her financial condition was referred to on *voir dire*. We dispose of this proposition by saying that while the proposition is true that the social or pecuniary condition of defendant in an action

such as this is not involved, the rest of the proposition is not here applicable. We have set out what occurred when the jury was being impanelled and find no error in it of which counsel for defendant can avail themselves. Counsel for plaintiff was merely endeavoring to ascertain the relation or connection, if any, between the prospective jurors and the parties. They had a perfect right to do this. We are not to assume that the mere mention of the name of the family to which defendant belonged conveyed to the jurors any idea as to the pecuniary standing or wealth or social position of that family. The jurors, as a body, could no more take notice of such matters than can we as a court. Moreover, as far as appears by the abstract furnished by appellant's counsel, when counsel moved the court to discharge the jury it appears that he stated that he did so on the ground "of prejudice created in the minds of the jury, the Peper family being well known in this city as people of means and wealth, and the minds of the jurors having been turned toward the wealth, or supposed wealth of the defendant which is an issue outside of the case." As that appears to have been stated in the presence of the jury, counsel for defendant himself was the one who brought before them the fact of the financial condition of the Peper family. There was no error in the action of the court in refusing to discharge the jury on the ground stated. Whether a question asked in the examination of the jurors on their *voir dire* is prejudicial, is largely within the discretion of the trial court. [Mahaney v. St. Louis & Hannibal Ry. Co., 108 Mo. 191, 1. c. 199; 18 S. W. 895.] Counsel have a right to probe a proposed juror to the bottom for the purpose of ascertaining whether or not his social or business relations, etc., are such as would probably prejudice him in the consideration of the case to be tried. [Saller v. Friedman Bros. Shoe Co., 130 Mo. App. 712, 1. c. 720, 109 S. W. 794; Boten v. Sheffield Ice Co., 180 Mo. App. 96, 1. c. 107, and following, and cases there cited (166 S. W. 993).]

The second point argued is that it was error to permit the witness, Dr. Ball, to state his conclusions from an experiment, because all the conditions necessary to reach a proper conclusion were not shown to exist and were not shown to have been the same as at the time of the original event, nor should an expert, it is argued, have been permitted to give his opinion on matters of common knowledge. This point is not well taken. It was open, as the court indicated to counsel for defendant, to test the conclusion stated by this witness which really was his statement of a fact. We see no error in this.

The third proposition, referring to the first subdision of that proposition, is that in an action by parents for the death of their minor child, the measure of damage is the actual expense of the accident, placing the difference between the probable money value of the child's services and the probable expense of his education, support and maintenance from the time of the accident until he becomes of age. This is a correct proposition as far as it goes. ''Probably money value of the child's services,'' however, is not solely tested by what he might earn if put to outside labor.

The second subdivision of this point three is, that in an action of this kind, evidence is admissible to show the probable earnings of the child from the time of his death until he would have reached his majority, and it is urged that the exclusion of the evidence of witness Fairbanks on this point was error. Counsel for defendant asked the witness what would be the probable earnings of a boy of the kind in question in his fourteenth year. That was objected to, objection sustained and exception saved. No foundation had been laid for the question. The witness was then asked if he had investigated the working conditions of boys of various ages as to what they earn. He answered that he had. That was objected to for the reason that the witness was not qualified to know what boys are earning, to which the court said: ''There is no use

arguing any further; I have already ruled," and sustained the objection. Then followed this, by counsel for the defendant: "I offer to prove the qualifications of the witness, and then prove what boys would earn from the ages of fourteen on to and including the twentieth year." That was objected to, the ground not stated, but objections to like questions had previously been made and sustained on the ground that they were speculative and the qualifications of the witness to answer had not been shown. The trouble with this offer is, that it was too general.

In City of Kirkwood v. Cronin et al., 259 Mo. 207, l. c. 214 (168 S. W. 674), it is said:

"Appellants' offer to prove does not set forth what the testimony would be if the witnesses were permitted to testify on this point and we are therefore unable to say whether the evidence which appellants desired to offer was admissible, or whether, if admissible, its materiality was such as that its exclusion would work a reversal of the case. An offer to prove should be specific and definite. [Copper & Iron Mfg. Co. v. Manufacturers' Railway Co., 230 Mo. 59, l. c. 77.]"

We may add that, notwithstanding the exclusion of testimony under this general offer, it appears that the witness was permitted to testify what would be the expense of maintaining a boy from the age of eight years until his twenty-first year.

We are enjoined not to reverse unless for error materially affecting the merits. Even if the offer to prove the earnings of a boy from his seventh to his twenty-first year had been acceded to and evidence admitted, we are unable to see how it could have affected the merits of this case or been prejudicial to the defendant. No complaint is made of the size of the verdict. We are unable to see any prejudicial error in the exclusion of this testimony.

Counsel admit that the courts of our State have never passed on the precise questions here involved, that is, testimony of competent parties as to the probable

earnings and expense of supporting a boy, but have cited authority to show that it has been held admissible, when properly offered, by courts of other States, notably by the Supreme Court of Michigan in Rajnowski v. Detroit, Bay City & Alpena R. Co., 74 Mich. 20, and in Sceba v. Manistee Ry. Co., 189 Mich. 308. But there the question of earnings expected was developed under proper testimony; here, as we have stated, there was a mere offer to produce testimony as to what the earnings of the boy would be. What that testimony in point of fact would be, and whether developed by proper questions and from a competent witness, was not covered by the offer. For that reason, and on the authority before stated, the offer was properly rejected.

These are the only points covered by the learned counsel for defendant in their argument. Finding them untenable, and finding no error to the prejudice of defendant in the trial and conduct of the case, the judgment of the circuit court is affirmed. *Allen, J.,* concurs. *Becker, J.,* not sitting.