Fannie LEATHEM and George Leathem,
Appellants,

v.

Carl E. LONGENECKER, Jr., and Beulah
E. Longenecker, Respondents.

No. 51612.

Supreme Court of Missouri,
Division No. 2.

Sept. 12, 1966.

A. L. Shortridge, Emerson Foulke, Joplin,
for appellants.

Karl W. Blanchard, Joplin, Seiler, Blan-
chard & Van Fleet, Joplin, of counsel, for
respondents.

JOHN J. WOLFE, Special Judge.

This is an action by Fannie Leathem to
recover damages she sustained by reason of
personal injuries. She was employed by
the defendants to do house cleaning. While
engaged in this work she fell from the
porch of defendants' house with resulting
injuries for which she seeks $25,000 dam-
ages. She charged that her fall was caused
by a defective doorsill on the porch.
George Leathem is her husband and he
joins in the action seeking damages for
loss of his wife's services. There was a
verdict and judgment for the defendants
and the plaintiffs prosecute this appeal.
They contend that the court erroneously

refused four verdict directing instructions they offered.

Plaintiff Fannie Leathem started working for the defendants in August, 1962. She worked for them one day a week for four or five hours. Both of the defendants were employed and consequently Fannie Leathem was alone in the house as she worked. When she arrived at the defendants' home on January 3, 1963, Mrs. Longenecker had not yet left for work, Before leaving she told Mrs. Leathem that the vacuum cleaner bag should be emptied. She gave no directions as to how this should be done. The vacuum cleaner was the tank type and the tank contained a bag to catch the sweepings. Plaintiff Mrs. Leathem took the bag out and emptied its contents into a trash container in the kitchen. There was still some dust in the bag and in order to shake this out she went out on a back porch upon which the kitchen door opened.

The porch was on the west side of the house near the southwest corner. It appears from photographs in evidence to have been about four feet above the ground. It rested upon concrete "piers." Upon the "piers" the rim joists of the porch rested. These were 2 x 8's and there were also supporting floor joists. The porch measured only five feet along the west side and four feet on the south side. It was enclosed on the west side by a lattice and on the south side it had a screen door that opened out to steps leading to the ground. There was a handrail on the east side of the steps but none on the west side. The porch had a roof slanting to the west. The flooring was made of 1 x 4 yellow pine, tongue and groove boards. The sill under the screen door was the same as the floor boards but it was about one-half inch wider than the other floor boards. It was nailed to the south supporting 2 x 8 main joist but it projected beyond the joist for one and one-half inches slightly above and over the top tread of the porch steps.

Mrs. Leathem testified that she took the vacuum cleaner bag out to the porch with the intention of shaking the dust that remained in it out into the yard below. She did not intend to go down the porch stairs to shake the dust out. It was her intention to open the porch door and shake the bag from a position in the doorway. She had the bag in her right hand so she pushed the screen open with her left hand. As the door was hinged on her right she was turned somewhat as she pushed it open. She described her posture as follows: " * * * I had my right foot up close because I was kinda standing a little bit sideways because there wasn't nothing to hold the screen back. And I had the sweeper bag in my right hand and I had hold of the door facing with my left hand and I just let the screen door come to kinda on my shoulder and I was just reaching out shaking it like that. (Indicating.)"

She said she was standing with her right foot projecting over the sill about one inch or one and one-half inches but her right heel was on the board behind the sill. Her left foot was behind the sill board. She said that as she was in this position " * * it felt like something went down and just give so it throwed me forward." She was asked if that was what caused her to fall and her answer was "Yes." She fell into the yard below and suffered fractures of the left leg and ankle and a dislocated shoulder. She managed to get back into the house and telephoned Mrs. Longenecker. Mrs. Longenecker called an ambulance, had it sent to the house, and Mrs. Leathem was taken to a hospital.

Mrs. Leathem was accustomed to the use of the porch. She swept it each time she worked there and at times opened the screen door to sweep the dirt out. She also went up and down the back steps each time she worked there. She never noticed anything wrong with the doorsill. The plaintiffs called a builder as an expert witness. He had examined the porch over a year and a half after the plaintiff fell. He testified that the sill board had an old split in it. He

said that the split looked like it had been there for several years. He said that he weighed 250 pounds and when he put his weight on the overhanging part of the board it went down a quarter of an inch. He did not measure the distance it went down but estimated it. A witness for the defendants said that the board depressed one-eighth of an inch under his own weight and one-sixteenth of an inch with the weight of Mrs. Longenecker. The Chief Building Inspector for the City of Joplin also called by the defendants testified that the porch structure was sound.

There was evidence that Mrs. Leathem had said that she did not know what caused her to fall. She had stated in answer to interrogatories: " * * * 'I was attempting to get out the screen door of the back porch to empty a vacuum sweeper bag. My right foot caught in the doorway, I tripped and fell forward down the back steps and on to the ground. I tried to catch the screen door with my left hand but could not.' " When she was confronted with this answer on the witness stand she testified, "Well, I was definitely not attempting to get out of the door."

The defendants both testified that the doorsill did not go down when stepped upon and Mr. Longenecker said that you almost had to jump on it to get it to give at all. They used the stairs and the door both before and after plaintiff's fall and found nothing wrong with it.

The only points asserted here are that the trial court erred in refusing to give certain verdict directing instructions on behalf of the plaintiffs. The plaintiffs offered and the court gave two verdict directing instructions, one on behalf of Mrs. Leathem covering her claim under Count I of the petition, and another covering Mr. Leathem's claim for loss of services under Count 2 of the petition. These were designated Nos. 2 and 3.

Instruction No. 2 was:

"Your verdict must be for the plaintiff Fannie Leathem upon Count I of the petition if you believe:

"First, there was an unstable door sill upon back porch floor which door sill of the screen door of the porch leading to the outside steps of defendants' dwelling was not reasonably safe for defendants' employee, and

"Second, plaintiff Fannie Leathem did not know and by using ordinary care could not have known of this condition, and

"Third, defendants knew or by using ordinary care could have known of this condition, and

"Fourth, defendants failed to use ordinary care to repair it, and

"Fifth, as a direct result of such failure, plaintiff Fannie Leathem was injured."

Instruction No. 3 was the same in form and substance except that it directed verdict for plaintiff, George Leathem, for loss of his wife's services. These two Instructions were followed by two Measure of Damage Instructions, one for each plaintiff, in the words of M.A.I. No. 4.01. The Burden of Proof Instruction provided by M.A.I. No. 3.01 was given and an instruction defining the term "ordinary care" as that is defined by M.A.I. No. 11.05. A converse Instruction was given stating:

"Your verdict must be for defendants if you believe the board under the screen door on defendants' back porch was reasonably safe for plaintiff Fannie Leathem's use."

Other than Instructions relating to the return and form of the verdict, these were all that were given at the close of the evidence.

■ Missouri Approved Instructions do not contain any instructions specifically designated for use in cases involving negligence actions against a master by a servant except those cases which come under

the Federal Employers' Liability Act. Instruction No. 2 quoted above was modeled after M.A.I. No. 22.03 which is a verdict directing Instruction to be given on behalf of an injured invitee. Plaintiffs, of course, cannot complain here about the Instruction given on their behalf and at their request.

They do, however, complain that the court refused two other verdict directing Instructions designated Nos. 11 and 15. One dealt with Fannie Leathem's cause of action and the other with her husband's. With that exception they were alike in all respects. They required the jury to find:

"First; that it was necessary for plaintiff Fannie Leathem in the scope of her employment by the defendants to use the back porch of defendants' residence,

"Second; that defendants caused or permitted said back porch door sill to be in an unsafe and dangerous condition for plaintiff Fannie Leathem's use while performing her duties in that the porch door sill had been permitted to become worn and unstable and defendants were thereby negligent, and

"Third; as a direct result of such negligence plaintiff Fannie Leathem was injured."

■ The Instruction attempts to restate the charged negligence in Instruction No. 2, omitting the requirement contained in No. 2 that Mrs. Leathem did not know of the defect alleged and adding the requirement that it was necessary for Mrs. Leathem to use the porch. It has been repeatedly stated that the master is not the insurer of the servant. Miller v. F. W. Woolworth Company, Mo., 328 S.W.2d 684; Dye v. Peterson, Mo.App., 350 S.W.2d 272; Wilborn v. Desloge Consol. Lead Co., Mo. App., 268 S.W. 655. However in some cases the servant may knowingly use dangerous tools or work in dangerous places without defeating his right to recover from the master for the master's negligence in providing such tools or places to work.

Keeney v. Callow, Mo., 349 S.W.2d 75; Sloan v. Polar Wave Ice and Fuel Co., 323 Mo. 363, 19 S.W.2d 476; Edmondson v. Hotel Statler Co., Inc., 306 Mo. 216, 267 S.W. 612. In such cases the knowing use of a dangerous tool or place by the servant presents a jury question on the issue of contributory negligence. Thus the omission of a finding that the servant did not know of the danger would not in all cases render such instruction erroneous.

■ The second clause, however, in the refused Instruction requires a finding that defendants "caused or permitted" the door-sill to be in a dangerous condition. The respondents contend that the court did not err in refusing the Instruction because it failed to require a finding that defendants knew or could have known that the doorsill was dangerous. This court has considered the phrase "caused or permitted" as it was used in instructions prior to the adoption of Missouri Approved Instructions. We are not concerned with the word "caused" as there is no evidence that the defendants caused the alleged condition. With some expressed dissatisfaction with the phrase, it has been held that it was sufficient to require a finding that the defendant "knew" and consequently was not erroneous as used in relation to the facts then under consideration.

In Carnes v. Kansas City Southern Railway Co., Mo., 328 S.W.2d 615, this court stated that the word "permit" implied knowledge, but questioned whether or not it implied knowledge for a sufficient period of time for the defendant to have had an opportunity to correct the condition of which plaintiff complained. Sometime before the Carnes case was before this court the same phrase was mentioned in a discussion of instructions which inferentially required a finding of knowledge on the part of defendant. In Schonlau v. Terminal R. Ass'n of St. Louis, 357 Mo. 1108, 212 S.W.2d 520, l. c. 424 and 425, the court stated: "Plaintiff's chief instruction covering the whole case did not require the jury

specifically to find that defendant had actual or constructive notice of the unsafe condition of the passageway floor. It is better practice to require such a finding * * *." Holding that the instruction otherwise required a finding of sufficient facts which inferentially included knowledge on the part of the defendant the court stated: "Defendant urges that we should re-examine that doctrine. Perhaps, if the circumstances of this case were otherwise, it would be well to do so, and, in the future, to limit its application only to those instances in which we are satisfied the jury, in making all the findings required by an instruction in order to reach the requested verdict, could not do so unless it also found defendant had sufficient knowledge of the unsafe condition complained of."

When the Supreme Court Committee on Jury Instructions submitted its report on the instructions it had approved it stated, M.A.I. XXI, "There are hundreds of currently acceptable instructions which use language more favorable to one side or the other than the proposed instructions. If counsel are permitted to 'improve' the approved instructions, even within the confines of specific precedents, the value of these instructions will be lost. Each such 'improvement' by one counsel will prompt an offsetting 'improvement' by his opponent and after a while the court will not be able to find the original with a divining rod." In the Foreword of M.A.I. on How to Use This Book, on page XXXII it is provided that in cases where no approved instruction is available " * * * counsel will need to research the law, find the elements required to prove the case and then submit them as ultimate issues in the same manner as issues are submitted in Missouri Approved Instructions."

■ Upon adoption of M.A.I. many of the instructions so adopted covered the required finding of actual or constructive knowledge on the part of the defendant. In such instructions they require that the defendant "knew" or in the exercise of the

required degree of care "could," or in other situations "should" have known. These words clearly require a finding of actual or constructive knowledge. It is no longer necessary or permissible to search out and use words which imply the meaning the instruction should convey where the exact meaning is expressed in M.A.I. The court did not therefore err in refusing instructions designated Nos. 11 and 15. The other two instructions which the court refused contained the same wording and the court did not err in refusing them.

The judgment is affirmed.

All concur.