Gloria BROWN and George Brown, Appellants,

v.

Henry Eugene BRYAN, Respondent.

No. 52292.

Supreme Court of Missouri, Division No. 1.

Sept. 11, 1967.

Motion for Rehearing or to Transfer to Court En Banc Denied Oct. 9, 1967.

Robert L. Shirkey, Dale Beal, Kansas City, for appellants.

E. E. Thompson, Thos. J. Conway, Jr., Kansas City, Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel, for respondent.

HIGGINS, Commissioner.

Action by Gloria Brown in Count I for $40,000 damages for personal injuries, and by George Brown in Count II for $10,000 damages for loss of services. They appeal from verdict and judgment for defendant.

Count I averred that plaintiff Gloria Brown was riding as a paying group rider in an automobile owned, operated, and in the exclusive possession and control of defendant Henry Bryan; that as the automobile was turned left at an intersection, the right front door suddenly flew open causing plaintiff to be thrown out of the automobile onto the pavement and injured; that the door was caused to open by reason of negligence of defendant, the exact cause being unknown to plaintiff but peculiarly within the knowledge of defendant.

Count II adopted these allegations in making claim for plaintiff husband's loss of services.

Defendant's answer admitted plaintiffs' residence and marital status and that plaintiff wife was a paying group rider in his automobile. All other allegations were denied and Mrs. Brown's injuries were attributed to her own negligence.

The sufficiency of evidence to make a case under plaintiffs' petition is not in question.

Appellants complain of the court's ruling on the voir dire examination where the following took place:

"MR. SHIRKEY (for plaintiffs): Now, this case here is brought against the defendant upon a theory of the law which we call the fact that it happened speaks for itself and inferentially, or we can infer from the way it happened, that the defendant was negligent, in that, ordinarily, when cars are driven down the street and corners are turned, doors do not come open and passengers fall out, or as we may use the term, circumstantial evidence to indicate that such a driver was negligent in the maintenance, the care and operation of

his automobile. Now, if His Honor tells you—

"MR. CONWAY (for defendant): Your Honor, I would like to object to that at this point. The case has not been submitted yet and the theory upon which it will be submitted will be determined at the time.

"THE COURT: The objection will be sustained.

"MR. SHIRKEY: Will you require this lady to show to your satisfaction the specific reason of why this door came open if His Honor instructs—

"MR. CONWAY: Your Honor, I'd like to make the same objection. THE COURT: The objection will be sustained and the jury will disregard the last remark. MR. SHIRKEY: I would like to make a record.

"WHEREUPON, the following proceedings were had WITHIN THE PRESENCE BUT WITHOUT THE HEARING OF THE JURY:

"MR. SHIRKEY: My question was, I propose to propound to the jury, would they require this lady to show the specific reason why this door came open and what was wrong with it—MR. CONWAY: I can hear him back here.

"MR. SHIRKEY: (Continuing)—before you would ever award any money damages for her injuries. I should like to know if anyone feels this way because I'm going to rely upon the law that in certain situations it is impossible for us to prove exactly what caused her injury and we're going to rely upon the circumstantial evidence to speak to cause us to believe that it happened as a result of negligence of the law of res ipsa loquitur.

"THE COURT: I understand your theory but—and the Court will instruct the jury as to the law at the conclusion of the case, and I believe you're getting into the field here—a dangerous field, in regard to this. Until the Court hears the evidence I can't tell you how the law will be and I presume you're basing your theory on what you hope and expect the evidence to be and I think it would be prejudicial to make this statement.

"MR. SHIRKEY: But the point of my question is this; I want to know if the jury is going to require us or any one of them, such as Mr. Hamm expressed a feeling a moment ago about a certain situation, would require us to show to them what happened and if we didn't show that then we're not entitled to recover, but I want to know if there's anybody with such a feeling.

"THE COURT: I think we're getting into dangerous territory."

The gist of the argument is that appellants were precluded from their constitutional right to "a fair and impartial jury," Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 698[6], 127 A.L.R. 711; Webb v. Missouri-Kansas-Texas R. Co., 342 Mo. 394, 116 S.W.2d 27, 29[5]; Mc-Monigal v. North Kansas City Development Co., 233 Mo.App. 1040, 129 S.W.2d 75, 83[14]; Tate v. Guinta, Mo., 413 S.W. 2d 200, from determining if any juror "has formed or expressed an opinion concerning" the case, Section 494.190, V.A.M.S., or from determining grounds of disqualification other than statutory grounds, Barb v. Farmers Ins. Exchange, Mo., 281 S.W.2d 297, 301[1], Lineker v. Missouri-Kansas-Texas R. Co., Mo.App., 142 S.W.2d 356, 359[6], because they were circumscribed in inquiring whether the jurors would require proof of a specific reason for the door to come open and what was wrong with it before awarding damages in this res ipsa loquitur or circumstantial evidence of negligence case.

■ Control and extent of the voir dire examination rests necessarily in the sound discretion of the trial judge and an appellate court will interfere only upon demonstration of manifest abuse of that discretion

and probability of injury to the complaining party. Olsten v. Susman, Mo., 391 S.W.2d 331, 335[6,7]; Eickmann v. St. Louis Public Service Co., Mo., 323 S.W.2d 802, 807 [7–10]; Bunch v. Crader, Mo.App., 369 S.W.2d 768, 771[4]; Linstroth v. Peper, 203 Mo.App. 278, 218 S.W. 431, 435[2,3].

Appellants say that "the individual juror's feeling concerning circumstantial evidence is unknown" but they neither asked nor offered to ask whether any of the prospective jurors would refuse to find defendant negligent on circumstantial evidence. Instead, they announced "the theory of law" which they intended to invoke and were proceeding in the manner of an attempt to have the jurors speculate or commit themselves as to what they would do under instructions which the court might give later in the trial.

A similar situation arose in State v. Katz Drug Co., Mo., 352 S.W.2d 678, 684 [4], where the state was permitted to question several jurors and receive affirmative answers to such as the following: " 'Now, if I prove * * * that February 22, 1959, was a Sunday, and that the Katz Drug Company * * * sold goods, wares and merchandise which were not medicines or drugs and not items of immediate necessity, and if the Court instructs you that that is a violation of the law, will you convict?' This was an improper attempt to commit jurors before they had heard evidence, instructions of the court or arguméht of counsel. As we said in State v. Heickert, Mo.Sup., 217 S.W.2d 561, 562: '[C]ounsel has no right on voir dire to cause the prospective jurors to pledge or speculate as to their action in certain contingencies which may later occur or arise during trial.' " See also State v. Katz Drug Co., Mo.App., 362 S.W.2d 80, 82–83[2]. In State v. Bolle, Mo., 201 S.W.2d 158, 159 [2, 3], appellant's complaint of undue restriction in the voir dire was denied and, appropriate to this case, the court approved the trial judge's comment: " 'I am going to sustain the objection. I will grant you the privilege of examining, but I will not accord you the privilege of explaining the law or what I will instruct on.' " For an extensive review of the law governing voir dire examinations, see Smith v. Nickels, Mo.App., 390 S.W.2d 578, 581[3–5]. The voir dire question asked by defendant was: "Would any of you hesitate to find in favor of my client if you felt that my client wasn't to blame for this accident?" Plaintiff's objection was that the question was an attempt to get a commitment from the jury prior to hearing the evidence. Defendant had a verdict and award of a new trial to plaintiff was affirmed. Among other observations on voir dire, the court said it "should be liberally permitted where calculated to *expose* prejudice; conversely, where it is calculated to *create* prejudice, it should be denied. * * * An established limitation prevents those questions tending to commit the prospective juror to a course of action, or asking that he speculate what his reaction might be in such manner that he might not feel free to react otherwise." See also National Bank of Rolla v. Romine, 154 Mo.App. 624, 136 S.W. 21, 22[1].

Appellants have not demonstrated an abuse of discretion. Eickmann v. St. Louis Public Service Co., supra, 323 S.W. 2d l.c. 807[10]. Their citations of State v. West, 69 Mo. 401, State v. Young, 119 Mo. 495, 24 S.W. 1038, State v. Punshon, 133 Mo. 44, 34 S.W. 25, State v. Miller, 156 Mo. 76, 56 S.W. 907, simply held that it was not error to excuse prospective jurors who stated they would not convict on circumstantial evidence. They did not involve propriety of voir dire questions and, as previously mentioned, the panel here was not asked if any member would refuse to infer negligence from circumstantial evidence. State v. Hoelscher, 217 Mo.App. 156, 273 S.W. 1098, and State v. Miller, Mo., 207 S.W. 797, simply held that it was error to refuse examination on whether jurors were members of the Ku Klux Klan or of a certain church, matters clearly involving possible prejudice in those cases. Similarly, the question in Shepard

v. Harris, Mo., 329 S.W.2d 1, was not an attempt to pledge jurors to the award of an amount, but was a determination of the existence of "any conscientious scruples about awarding that amount." The propriety of the question in Moore v. Ready Mixed Concrete Co., Mo., 329 S.W.2d 14, was not ruled but it was assumed improper for purposes of the opinion; and in Moore v. Middlewest Freightways, Inc., Mo., 266 S.W.2d 578, an unexcused juror had admitted his prejudice against the "big fellow" corporation.

At the request of plaintiffs the court gave Instruction No. 4:

"Your verdict must be for the plaintiff, Gloria Brown, if you believe:

"First, the defendant, Henry Eugene Bryan, was the driver and operator of the automobile, and

"Second, the right front door suddenly opened, and

"Third, such opening of the door and Gloria Brown being thrown from the automobile was the direct result of defendant, Henry Eugene Bryan's negligence, and

"Fourth, as a direct result of such negligence plaintiff Gloria Brown, sustained damage."

and Instruction No. 5:

"Your verdict must be for the plaintiff, George Brown, if you believe:

"First, the defendant, Henry Eugene Bryan, was the driver and operator of the automobile, and

"Second, the right front door suddenly opened, and

"Third, such opening of the door and Gloria Brown being thrown from the automobile was the direct result of defendant, Henry Eugene Bryan's negligence, and

"Fourth, as a direct result of such negligence plaintiff, George Brown's wife, Gloria Brown, was injured and plaintiff, George Brown, therefore sustained damages."

Appellants charge that it was error to give these instructions "as required to be given by plaintiffs under Supreme Court Rule 70.01 for the reason that said instructions constitute a misstatement of the law of Missouri in that they are incomplete in failing to advise the jury that 'the opening of the door and Gloria Brown's being thrown from the automobile was sufficient circumstantial evidence to warrant a finding by the jury that the defendant was negligent, and that such occurrence would not ordinarily happen if the defendant had exercised the highest degree of care, and that the defendant possessed superior knowledge or means of information as to the cause of the occurrence than did the plaintiff.' "

Appellants concede that Instructions 4 and 5 are MAI 26.02(2). Their argument is that they are inadequate for a res ipsa loquitur case in that McCloskey v. Koplar, 329 Mo. 527, 46 S.W.2d 557, 559[2], 92 A.L.R. 641, required three conditions to exist for res ipsa loquitur to apply: "(a) the occurrence resulting in an injury was such as does not ordinarily happen if those in charge use due care; (b) the instrumentalities involved were under the management and control of the defendant; (c) and the defendant possesses superior knowledge or means of information as to the cause of the occurrence"; that "the mandatory res ipsa M.A.I. Instruction 26.02(2) does not set forth the above three requirements nor is the jury told as * * * in Harke v. Haase (335 Mo. 1104, 75 S.W.2d 1001), l.c. 1004, supra: 'Then you are instructed that such facts (if you believe them to be true) are sufficient circumstantial evidence to warrant a finding by you that the defendant was negligent.' "

This contention fails for three reasons. First, the instructions follow MAI

26.02(2) and do require the findings of the conditions delineated in McCloskey v. Koplar, supra, and Harke v. Haase, supra. The finding required by paragraph first necessarily covers the element of management and control of the instrumentality involved; paragraph second supplies the element of an occurrence which does not ordinarily occur where the party in charge uses due care; the element of superior knowledge of the occurrence is implicit in the required finding that defendant was the driver and operator of the faulty instrumentality, and the finding of negligence is authorized upon the findings required by paragraphs first and second. McCloskey v. Koplar, supra, is recognized as the source of MAI 26.02(2), Committee's Comment MAI p. 216, and it is likewise the authority cited in Harke v. Haase, supra. Second, since there was an MAI applicable to this res ipsa loquitur case, it was required to be given "to the exclusion of any other on the same subject," Civil Rule 70.01(b), V.A. M.R. And third, "Plaintiffs, of course, cannot complain here about the Instruction(s) given on their behalf and at their request." Leathem v. Longenecker, Mo., 405 S.W.2d 873, 876[1].

█ Appellants charge error "in permitting the issue of seat belts and plaintiff (Gloria Brown) not using these being injected into the case by the defense over plaintiffs' objection for this was not contributory negligence as there was no legal obligation under our law to so fasten a seat belt." The argument is that "in the circumstances of the instant case a false, fictitious and collateral issue was injected into the case * * *. The fact that the prejudicial effect of such collateral and false issue poses difficulty in assessing what effect it may have is the very foundation upon which to base the assumption that this was prejudicial. To rule otherwise is to say that defense counsel was merely on a mission of distracting the jury from the central issue * * *. While certainly it must be conceded that it was an honorable effort on his part, nevertheless, with no legal ob-

ligation to do so it was indeed prejudicial for such issue to be injected into the case."

All references to seat belts are contained in the following portions of the record.

On the recross-examination of Mrs. Brown the following occurred:

"Q. Mrs. Brown, this car that you were riding in was equipped with seat belts in the front seat, was it not? A. I really don't know. Q. You don't know whether it had seat belts or not? A. No, sir.

"(DEFENDANT'S EXHIBIT NO. 7 MARKED FOR IDENTIFICATION.)

"Q. (By Mr. Conway) I want to hand you Defendant's Exhibit 7, Mrs. Brown, and ask you if that looks like the car that you fell out of? A. It could be, yes. Q. Well, is it a fair representation of Mr. Bryan's automobile? A. I would say so. MR. CONWAY: All right. We want to offer in evidence Defendant's Exhibit No. 7. MR. SHIRKEY: May I see it, please?

"(WHEREUPON, the following proceedings were had WITHIN THE PRESENCE BUT WITHOUT THE HEARING OF THE JURY:)

"MR. SHIRKEY: Your Honor, there has been no pleading that any seat belts should have been fastened in this case and there has been no legal case ever decided that failure to fasten a seat belt is in any way negligent and that it is imperative on behalf of any rider in any automobile and I would object to that picture and the injection of seat belts into this case for that reason. THE COURT: Overruled.

"(WHEREUPON, the following proceedings were had WITHIN THE PRESENCE AND HEARING OF THE JURY:)

"Q. (By Mr. Conway) Now, looking at this exhibit, Mrs. Brown, doesn't that refresh your recollection that there were two seat belts in the front seat that you were riding in? A. I don't recall it at all. Q. You don't recall it at all? A. No.

"Q. Do you recall Mr. Bryan and the other ladies in the car mentioning seat belts at any time before this accident? A. No, sir, I do not. Q. Do you ever recall sitting on the seat belt buckles? A. No, sir. Q. Or having trouble with them falling out of the car and you had to put them back in? A. If I recalled that I would remember there were seat belts.

"Q. Your answer is that you don't remember but you're not denying that they were there? A. I do not know. Q. You don't know one way or the other? A. No, sir.

"MR. CONWAY: I would like to have the jury look at that, please."

Further testimony bearing on this contention follows:

From the direct examination of Mr. Bryan: "Q. Now, did that car have any special equipment in it of any kind, Hank? * * * A. Special equipment, I put seat belts in it * * *. Q. How many seat belts did it have in the front seat? * * * A. Well, there was two regulation seat belts for adults and I had one in for my little boy * * * It was in the middle, between the other two * * *. Q. Did you ever make any mention of the fact that you had seat belts in the car? A. Well, to my knowledge it was brought up once for sure, maybe more, because I made some comment about my little boy's seat belt and I said, 'Well, the one on the outside could wear the one and Thelma could put the other one around her.' I chuckled over that because it was a little bit small. Q. Okay. Now, did you use your seat belt in the car, Hank? A. Yes, sir. Q. Did you do that routinely? A. Yes, sir. Q. Did you do that on the night this accident occurred? A. Yes, sir. * * Q. Hank, I want to show you what's been marked for identification purposes, Defendant's Exhibit 7 and I wonder if you could tell me what that is, please? A. That's the side view of my old car, '59 Rambler, taken from the right side of the car. Q. And does that fairly and accurate-

ly depict the interior of your car as it would look on the night of this accident, October 4, 1963? A. Yes, sir. MR. RUSSELL: I would like to offer Defendant's Exhibit 7 at this time. MR. SHIRKEY: I have no objection. I thought it was offered. MR. RUSSELL: I don't think it was received at that time."

And from his cross-examination: "Q. She (the passenger in the middle of the front seat) was not fastened in any seat belt either, was she? A. No, sir. Q. The ladies in the back seat weren't fastened by any seat belt, sir? A. They could not. * * * There wasn't any in the rear seat."

And a subsequent owner, Ray Evans, testified: "Q. Now, in the car when you purchased it, Mr. Evans, were there any seat belts? A. Yes. Q. How many? A. Two sets, one in the front seat, one on each side."

Other trial incidents related to this contention were:

Defendant's answer charged that plaintiffs' injuries resulted from Mrs. Brown's own negligence; and defendant offered an instruction on contributory negligence, refused by the court, based on failure to use a seat belt, and defendant's jury argument included the following: " * * * Let's look at this car. It had seat belts. You all saw the pictures. She got into that car and got out of that car seventy-two times. Here are the seat belts over here in Defendant's Exhibit 7, and you know, folks, if you get in and get out of there seventy-two times you've got to sit on that seat belt, you've got to kick it or do something to know that it's there. You have to be aware that it's there if you've gotten in and out seventy-two times, no doubt about that. * * * If she wanted to be so safe why didn't she reach around and grab that. seat belt and 'click', she would have been right in, couldn't have fallen out. That's what seat belts are for, folks. It's just as plain as anything, you all know that all the car manufacturers are putting them out now. They have to. Put that seat belt on, 'click'; if she had done

that, this accident couldn't have happened, just couldn't have happened. * * * When Mrs. Brown fell out Hank was in the front seat. He had his seat belt on. He stopped the car, turned the motor off, undid his seat belt, went around the car back to where she was * * *. Folks, I just have a few minutes here to talk to you on behalf of the defendant. It seems to me that this is a case that's quite simple. It's a situation where the plaintiff just didn't do what she should have done. She should have buckled that seat belt. You know, you go down the highways these days now and here are these signs, 'Buckle up for Safety'. That's just what this plaintiff didn't do. She just didn't buckle that seat belt.

"MR. SHIRKEY: Your Honor, I object to this. There's no charge of that in the petition, no charge of that made to the jury and beyond the instructions of the Court.

"THE COURT: Objection will be sustained."

These excerpts show that the first mention of seat belts came in the recross-examination of Mrs. Brown and there was no objection to the questions or answers. Next came Exhibit 7 which was objected to on the ground that there was no pleading relating to seat belts and that there was no obligation to fasten a seat belt as an avoidance of contributory negligence. However, a general charge of contributory negligence was pleaded against Mrs. Brown, Martin v. Turner, Mo., 306 S.W.2d 473, 477[2–3], and the picture of the interior of the car was a fair and accurate representation of the interior of the car from which Mrs. Brown fell. It was ultimately received in evidence with plaintiffs' counsel stating "I have no objection." Mrs. Brown then continued to be cross-examined about seat belts without objection, and there was no objection to any of the other witnesses testifying about seat belts. When objection ultimately was made to defendant's argument, and then only after several previous references to seat belts without objection, the court granted all the relief requested by plaintiffs. At no time was there a request to instruct the jury to disregard, to strike or to withdraw any of the testimony, exhibits, or argument relating to seat belts. It is not necessary to determine whether there is any legal obligation in Missouri to fasten a seat belt or whether failure so to do is contributory negligence (for discussions in other jurisdictions on this question, see Brown v. Kendrick, Fla. App., 192 So.2d 49; Sams v. Sams, 247 S.C. 467, 148 S.E.2d 154; Kavanagh v. Butorac, Ind.App., 221 N.E.2d 824; Mortensen v. Southern Pacific Co., Cal.App., 53 Cal.Rptr. 851; Bentzler v. Braun, Wis., 34 Wis.2d 362, 149 N.W.2d 626; Lipscomb v. Diamiani, Del., 226 A.2d 914) because, although pleaded and tendered, no instruction was given submitting that issue. Consequently, this point is simply one of admissibility of evidence and propriety of argument, and the record does not convict the court of prejudicial error in either respect. Section 512.160, V.A.M.S.; Prater v. Atchison T. & S. F. R. Co., Mo., 410 S.W.2d 76, 79[2]; Appelhans v. Goldman, Mo., 349 S.W.2d 204, 207[4–6].

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM.

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

HENLEY, P. J., and SEILER and HOLMAN, JJ., concur.

STORCKMAN, J., not sitting when cause was submitted.